HEW CORPORATION et al., Plaintiffs,

v.

TANDY CORPORATION, Defendant.

Civ. A. No. 73–2654–F.

United States District Court,
D. Massachusetts.

Nov. 21, 1979.

10. The court notes that defendant's explanations as set forth in the hearing memoranda were persuasive.

Harold Brown, Brown, Prifti, Leighton & Cohen, Boston, Mass., for plaintiffs.

John J. Curtin, Jr., Bingham, Dana & Gould, Boston, Mass., for defendant.

John G. Fabiano, Hale & Dorr, Boston, Mass., for class representatives Hollis E. Whitney, Antonio Esposito, Gerald Berman, Leonard Safran.

## MEMORANDUM

FREEDMAN, District Judge.

This case is presently before the Court on the substitute application of Harold Brown and Brown, Prifti, Leighton & Cohen for an award of attorneys' fees and expenses. Petitioners seek a total award of $571,098.60 [1]

---

1. This requested award appears to have mistakenly omitted some 126.00 hours of billable time. The sum of the categories of time spent in Appendix C–3 to the "Memorandum of Harold Brown In Support of the Petition For Fees and Costs" exceeds the sum of the hours attributed to each of the three named attorneys by that figure. Because I have determined this discrepancy to have been the result of a mathematical error and, moreover, because the position of the objectors to the application would not be materially affected or altered by an increase in the number of hours billed by petitioners, I will consider the application as correctly requesting an award which would encompass the additional 126.00 hours.

for services rendered and expenses incurred in connection with the litigation and the ultimate settlement of this antitrust action. After having considered the memoranda, affidavits and exhibits proffered by the parties in light of the pertinent authorities, I have decided that an award of $351,666.23 represents fair and just compensation for petitioners' fees and disbursements.[2]

The complaint commencing this civil action, alleging violations of section 1 of the Sherman Act, 15 U.S.C. § 1, was filed on August 9, 1973. Plaintiffs averred that defendant Tandy Corporation ("Tandy") conspired with its own subsidiaries and divisions to fix prices for Radio Shack merchandise. This activity, which plaintiffs contend had both vertical and horizontal aspects, was alleged to have occurred in contravention of a franchise agreement provision authorizing each franchisee to determine its own retail prices. The complaint charged further that Tandy conspired to illegally restrict the alienability of plaintiffs' franchises. Both injunctive relief and treble damages were requested.

In its counterclaim, Tandy asserted that plaintiffs had conspired in violation of antitrust laws. The case was certified as a class action on August 12, 1974. On January 16, 1979 this Court approved an amended stipulation of settlement; the matter of attorneys' fees remaining outstanding. On July 16, 1979 an evidentiary hearing, at which all interested parties were given an opportunity to be heard, was held on the application for fees. The application was taken under advisement as of July 30, 1979.

▇▇▇ Rule 23, F.R.Civ.P. contains no provision concerning an award of attorneys' fees in class action litigation. Moreover, section 4 of the Clayton Act, 15 U.S.C.

§ 15,[3] which does speak to the fees issue, is applicable where a case ends in a judgment on the merits for the plaintiff, *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 468–9 (2d Cir. 1974), thus it is of little assistance where a compromise settlement has been struck. Any award of attorneys' fees here, therefore, must be a product of this Court's exercise of its equitable power to "make fair and just allowances for expenses and counsel fees" from a class fund[4] to those whose efforts have benefitted the fund. *Trustees v. Greenough*, 105 U.S. 527, 536, 26 L.Ed. 1157 (1881). The purpose of such an award in this case then, would be to compensate the attorneys for the reasonable value of their services which benefitted the class by establishing, preserving or protecting the fund. *See Grinnell, supra* at 470, *quoting Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corporation*, 487 F.2d 161, 167 (3rd Cir. 1973) ("Lindy I").

▇▇▇ While it is well-settled that what will constitute a reasonable attorney's fee in a particular case shall rest within the sound discretion of the Court, *see Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), it is nevertheless true that fee awards must be "made with moderation and a jealous regard for the rights of those who are interested in the fund." *Trustees v. Greenough, supra*, 105 U.S. at 536, 26 L.Ed. 1157. In any event, this Court has a mandate to avoid awarding any amount that would constitute a "windfall fee" for the attorneys and, likewise, must avoid even the appearance of having done so. *See City of Detroit v. Grinnell, supra*, 495 F.2d at 469.

Recognizing then, that a court's role in equity is to establish a reasonable and just

---

**2.** From this total award petitioners will, of course, reimburse to class members monies which had been advanced in the form of retainers ($58,400.00) or expenses ($6,778.86).

**3.** 15 U.S.C. § 15 provides:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the

district in which the defendant resides . . . without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fees.

**4.** The compromise settlement reached in this case included, in addition to contractual changes in the franchise agreements, a fund of $900,000.00.

fee award so as to compensate petitioners for services and expenditures that have benefitted the class fund, this Court must determine what has been referred to as the "lodestar" figure. In order to establish this lodestar amount, the Court must initially study petitioners' time sheets in order to calculate the number of hours reasonably worked during the case. Having arrived at this figure, the Court must then seek to place a value on those hours. *See Grinnell, supra* at 470–1.

This Circuit has adopted twelve factors listed in *Johnson v. Georgia Highway Express, Inc., supra,* as the criteria to be considered by a court seeking to award attorney's fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, as amended. *King v. Greenblatt,* 560 F.2d 1024, 1026 (1st Cir. 1977). Although the matter presently before this Court is not directly on point with *King* in that an award here would be pursuant to the equitable fund doctrine, the *Johnson* factors nevertheless facilitate the attempt to place a value on time expended by the attorneys.

### 1) *Time Expended*

Petitioners have provided time records which I find to have satisfied the strictures set forth in *King v. Greenblatt, supra.* However, this Court would be remiss in its duty if it were merely to "rubber stamp" the time charged. The hours worked must be evaluated in light of this Court's experience; time should not be valued at a uniform rate. Rather, work that is more ministerial or clerical than it is legal should be compensated at a lower rate than that which is purely legal. Furthermore,

hours charged that do not benefit the fund in any way should not be compensated at all.

With regard to this petition, I have carefully studied the time charged in relation to the time and labor reasonably required for the litigation and settlement of this case. I have determined that Harold Brown should be compensated for 1,773.10 hours of work,[5] 1,493.35 hours of which should be assessed at the full value of his hourly rate. Of the remaining time, 229.05 hours should be valued at a lower rate because they represent general labor; work that was in large part ministerial or clerical. An additional 48.70 hours should be valued at a lower rate because they represent work done after the compromise settlement was approved by this Court. Mr. Brown should receive no compensation for 42.60 hours. Of this block, 38.40 hours were spent in preparation of the fee application.[6] *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corporation,* 540 F.2d 102, 111 (3rd Cir. 1976) ("Lindy II").

In addition to Mr. Brown's time, I have decided that the firm of Brown, Prifti, Leighton & Cohen should be compensated for 63.90 hours of work performed by L. Seth Stadfeld and for 42.85 hours for P.A. Pease's services. Of Mr. Stadfeld's time, 38.55 hours should be compensated at his full hourly rate (which will be less than that of Harold Brown because Mr. Stadfeld is neither a senior partner in the firm nor as experienced in the antitrust field). The general work done by Attorney Stadfeld, 1.75 hours, should be valued at a lower rate as should the 23.60 hours which represent

**5.** The Court notes that in many instances, Mr. Brown has attributed a great deal of hours to single dates. Specifically, on November 27, 1973 he assigned 62.00 hours; on April 12, 1974, 87.00 hours are charged; 28.00 hours are billed for May 30, 1974 and, on January 13, 1975, 30.00 hours are listed. Obviously, the times charged must represent the total number of hours put in over several days. Therefore, while this type of billing is somewhat of a hindrance to the Court, the hours will not be rejected as having insufficient documentation.

**6.** The remaining 4.20 hours of non-compensated time is comprised as follows: 1) 3.00 hours

of the 4.00 hours charged on November 18, 1974 for studying issues of moving for a separate trial of liability and damages. Since this case ended in settlement, the fund was not benefitted by these hours. 2) On June 24, 1974 Mr. Brown charged 2.00 hours for studying this Court's two-page order adopting the Magistrate's recommendation concerning discovery motions—1.00 is clearly sufficient. 3) Finally, the remaining .20 hour was disallowed because Mr. Brown sought to be compensated for reserving a room at a hotel on October 16, 1978.

services done after the approval of the settlement between plaintiffs and Tandy. Similarly, all of the hours attributed to Mr. Pease should be valued at less than his billing rate because the work was done after January 16, 1979. The firm will receive no compensation for the .10 hour that Mr. Pease worked on the fee application.

### 2) *Novelty and Difficulty of the Questions*

This case involved rather novel questions with regard to the alleged horizontal and vertical aspects of the price fixing. However, the case ended in settlement, had it proceeded to a trial on the merits, plaintiffs would have encountered substantial burdens of persuasion. Counsel's ability to extract the contractual changes in the franchise agreements and the fund of money then, must be viewed in light of these potential difficulties as well as in light of defendant's demonstrated willingness to seek a compromise settlement almost from the inception of the action.

### 3) *Skill Requisite to Perform the Legal Service*

The qualifications of Harold Brown are beyond dispute. He is nationally known in the areas of antitrust law in general and franchising in particular. The Court is also mindful of the fact that prior counsel had rejected plaintiffs' case.

Nevertheless, it must be noted that very little time was actually spent in Court. The Court, therefore, has had little opportunity to observe Mr. Brown's performance on a first-hand basis.

The fact that there was no prior or pending criminal action against Tandy is also relevant. This factor is negated to some extent, however, by the fact that plaintiffs did have the benefit of similar complaints filed in other districts. The Court has also noted that no discovery was taken in this case since November 1976 and that many of the conferences that led to the settlement occurred at the instance of the parties and were conducted without the benefit of counsel.

### 4) *Preclusion of Other Employment*

There is nothing in the record to indicate that either Attorney Brown or the firm were precluded from other work by this litigation.

### 5) *Customary Fee*

Harold Brown has introduced evidence to show that the customary fee charged by attorneys with his stature and experience range from $100.00 to $200.00 an hour. Based against this background, the requested fee of $150.00 an hour seems reasonable. The hours billed for general activities and for services rendered after January 16, 1979 should be compensated at a lower rate.

The application has also requested a fee of $75.00 an hour for work performed by L. Seth Stadfeld. Information relative to Mr. Stadfeld's ability and experience is lacking but it is obvious to the Court that the services rendered by him were done under the direction and supervision of Harold Brown. In any event, this Court, calling on its own experience in these matters, finds that $75.00 an hour for work done by a partner in a firm is reasonable. However, I also find that the work done by Mr. Stadfeld of a general nature (1.75 hours) as well as that done after the compromise agreement was approved (23.60 hours) should be valued at a lesser rate.

With respect to P.A. Pease, petitioners request remuneration at a rate of $40.00 an hour. Again, while this is a reasonable billing rate for a law firm's associate, all of Mr. Pease's time was put in after the January 16, 1979 settlement approval. Thus, the firm should receive something less than its usual billing rate for his services.

### 6) *Whether the Fee is Fixed or Contingent*

It is clear that contingent fees have no place in equitable fund cases. *Lindy II, supra* at 119–120; *City of Detroit v. Grinnell Corporation, supra*, 495 F.2d at 470–1. This fee then, will be based entirely upon this Court's evaluation of the benefit to the fund of the services performed and its determination of reasonable compensation for those services.

### 7) Time Limitations Imposed by Clients or Circumstances

I find that there were little or no time constraints placed upon counsel in this case. The complaint was filed in 1973 and the settlement was not finally approved until 1979 despite the fact that relatively few hours were spent in court during that time span. While there is evidence that many franchisees sold out before the settlement was reached, their actions seem to have had little effect upon the ultimate result of the action.

### 8) Amount Involved and Results Obtained

In addition to the fund of $900,000.00, there have been numerous contractual modifications made to the basic franchise agreements between Tandy and the franchisees. The plaintiffs' economic expert, William Gruber, has stated that the franchisees will realize a benefit of approximately 12.5 million dollars over ten years as a result of these changes.[7] Mr. Gruber admits that his evaluation is based on assumptions about the future course of conduct between Tandy and the franchisees and that, therefore, there is some degree of uncertainty involved.

One of the basic assumptions is that the franchisees adopt the new agreements. Petitioners have stipulated that the franchisees need not adopt the new contract if they feel they are better served with the old and that this election would not prejudice their right to a portion of the $900,-000.00 fund. The Court notes in this regard that fewer than one third of the franchisees had elected to adopt the new agreement as of the time this matter was taken under advisement. A reading of the materials submitted indicates that some dispute still lingers as to whether some necessary contractual changes have been obtained. Perhaps this disagreement has effected the adoption of the agreements.

There is also evidence to the effect that most of the contractual changes and much of the fund was agreed upon in 1977 at a meeting held without counsel. See Affida-vit of Class Representative Antonio Esposito Regarding Contractual Changes in Franchise Agreement. Viewed in this light, the result obtained in this case, at first glance very impressive, loses some of its lustre.

### 9) The Experience, Reputation and Ability of Attorneys

This subject was addressed in the section on customary fees, supra. Again, there is no question as to Harold Brown's experience, reputation or ability. While information concerning both Attorney Stadfeld and Attorney Pease is lacking, the fact that they played relatively minor roles in this litigation and that their roles were to assist Mr. Brown is apparent.

### 10) The "Undesirability" of the Case

There is nothing before this Court to indicate anything undesirable about representing the class of plaintiffs. This is one factor of the Johnson test that lends itself more easily to civil rights litigation.

### 11) Nature and Length of Professional Relationship

Again, this criterion is inapplicable to the application before the Court.

### 12) Awards in Similar Cases

Petitioners point to Lindy II as justification for a double recovery of the lodestar amount. I find this analogy to be inappropriate. Lindy II was a multidistrict litigation case involving the consolidation of some 370 different actions. The settlement negotiated in that case amounted to approximately 29 million dollars. It is obvious then, that Lindy has relevance with respect to this petition only in that it serves as an illustration that a contingency factor of 2 is not called for here.

Having utilized the Johnson criteria with regard to this application for fees, this Court is now in a position to determine the lodestar figure by placing a dollar value on each of the different categories of hours worked by petitioners.

### Harold Brown

The Court will award Mr. Brown $150.00 an hour for the 1,495.35 hours of litigational activity he performed in connection with

---

7. *See* Appendix A 1 (Economic Expert's Final Report).

this case. As for the 229.05 hours he performed general duties, I find that $100.00 an hour is just and reasonable. Finally, for work done after this Court approved the compromise settlement, 48.7 hours, he should be compensated at a rate of $75.00 as these services did not result in as great a benefit to the fund established.

### L. Seth Stadfeld

I find that the firm of Brown, Prifti, Leighton & Cohen should be reimbursed at a rate of $75.00 for the 38.55 hours that Mr. Stadfeld performed purely legal work. In addition, I find that $65.00 an hour is just and reasonable compensation for the 1.75 hours he spent on general duties. Finally, the firm should receive $50.00 an hour for work performed by Mr. Stadfeld after January 16, 1979 due to its decreased beneficial value, in a relative sense, to the class fund.

### P.A. Pease

Mr. Pease put in 42.85 hours [8] of work after the settlement was approved by this Court. Because these hours represent mainly procedural tasks that had little effect on the fund itself, I find that the firm should be compensated at a rate of $30.00 an hour for his time.

### Lodestar [9]

The lodestar is determined by a multiplication of the hours the attorney reasonably worked by the value of that time. Thus, the lodestar in this case amounts to $256,330.50: [10]

| Attorney | Hours | | Rate | | |
|---|---|---|---|---|---|
| Harold Brown | 1,495.35 | x | $150 | = | $ 224,302.50 |
| | 229.05 | x | 100 | = | 22,905.00 |
| | 48.70 | x | 75 | = | 3,652.50 |
| L. Seth Stadfeld | 38.55 | x | 75 | = | 2,891.25 |
| | 1.75 | x | 65 | = | 113.75 |
| | 23.60 | x | 50 | . = | 1,180.00 |
| P. A. Pease | 42.85 | x | 30 | = | 1,285.50 |
| | | | | | $ 256,330.50 (lodestar) |

The arrival at the lodestar does not end this Court's inquiry however. I must now determine whether or not it would be appropriate in this case to adjust the lodestar. There are two additional factors to be considered in this regard, "the contingent nature of success" and the "quality of the attorney's work." *See Lindy I, supra,* 487 F.2d at 168–9.

### Contingent nature of success

The Court must look to the plaintiffs' chances for a successful resolution of this lawsuit at the time the complaint was filed in order to determine this contingent nature of success factor. Here, a prior attorney had refused to litigate plaintiffs' claims. In addition, there was no criminal action upon which to base a complaint, and no judgment

8. Petitioners' figures with respect to hours worked by Stadfeld and Pease differ somewhat from the findings made by this Court. The information contained in the diary of time records (Appendix C–1) as well as the categorized graph extrapolated therefrom (Appendix C–2) were of little assistance to the Court in this regard.

9. *See* Appendix to this Memorandum for computational analysis.

10. This amount does not include compensation for 25.00 hours of "Post Settlement Activity" due to the nebulous nature of this particular category and due also to the fact that the lodestar encompasses a total of 254.00 hours for "Settlement Promotion" and "Settlement Procedures." *See* Appendix.

Furthermore, the 49.80 hours billed for work done in preparation of the fee application has not been factored in because that time benefitted only the petitioners and not the class fund. *See Lindy II, supra,* 540 F.2d at 111. Petitioners' contention that the fee award in *Souza v. Southworth,* 564 F.2d 609 (1st Cir. 1977) controls here is not persuasive. *Souza* speaks to compensation for time spent litigating the fee issue on appeal and is therefore not directly on point with the issue before this Court.

to introduce as evidence in this case. Moreover, petitioners' theories were novel and would have been difficult to prove at a trial on the merits.

These factors are counterbalanced somewhat by the fact that petitioners did receive $58,400.00 in retainers from various class members at the outset of this litigation; thus, there was never a possibility that counsel would receive no compensation for their services, even had the case terminated in an adverse verdict. Furthermore, it was on Tandy's initiative that the settlement discussions were entered into shortly after the filing of this action.

On balance, however, I find that a factor of 1.25 should be applied to that portion of the lodestar which represents the time Harold Brown worked at full compensation. I find that this factor is justified because of the contingent nature of success in this case due to the novel issues and approach presented by the complaint and due also to the difficult burden plaintiffs would have encountered at trial.

I have not applied this contingency factor to that part of the lodestar which represents time expended by Attorneys Stadfeld or Pease, or to those hours worked by Mr. Brown which I have previously determined should be valued at a rate less than full compensation. This decision was prompted both by the fairly substantial retainer involved here and by a finding that those hours did not reap as great a benefit upon the class fund.

### Quality of the attorney's work

█ I find no reason to increase the lodestar because of this additional consideration. While there is no question but that Harold Brown ably represented plaintiffs and that he negotiated the best settlement possible in these circumstances, those factors were considered when I set his hourly rate at $150.00. Adjustments to the lodestar for unusual quality are the exception rather than the rule. *See Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 at 1219 (3rd Cir. 1978). This case comes within the general rule.

Having thus adjusted a portion of the lodestar by a contingency factor of 1.25, the total amount to petitioners for attorneys' fees is $312,406.13.

| Attorney | | |
|---|---|---|
| Harold Brown | $ 224,302.50 x 1.25 = | $ 280,378.13 |
| | | 22,905.00 |
| | | 3,652.50 |
| L. Seth Stadfeld | | 2,891.25 |
| | | 113.75 |
| | | 1,180.00 |
| P. A. Pease | | 1,285.50 |
| | | $ 312,406.13 |

I find that this award represents reasonable and just compensation for services rendered by Harold Brown, L. Seth Stadfeld and P.A. Pease in connection with this litigation.

### Expenses

In addition to fees, counsel for plaintiff class are entitled to reimbursement for expenses reasonably incurred during this case. Petitioners have requested a *total award* of $39,260.10 for costs and expenses. After considering the documentation provided by the parties, I have concluded that this is a reasonable request and should be granted.

### Summary

█ In summation then, this Court finds that a total award of $351,666.23 represents reasonable and just compensation for petitioners' fees and expenses in connection with this litigation. This sum is comprised in part by an award to Harold Brown of $306,935.63 for attorneys' fees, and awards to Brown, Prifti, Leighton & Cohen of $4,185.00 for services performed by L. Seth Stadfeld and $1,285.50 for work done by P.A. Pease. The balance of the award, $39,260.10, represents reimbursement for petitioners' expenditures. These amounts should be distributed to petitioners from the class fund of $900,000.00 which was the product of the compromise settlement entered into by the parties with this Court's approval. From this award, petitioners will reimburse those class members who advanced monies to them either in the form of retainers or expenses.

An appropriate order shall enter.

## APPENDIX

| | HAROLD BROWN | | | | L. SETH STADFELD | | | | P. A. PEASE | | | | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Hours Full Comp. @ $150 | Hours 2/3 Comp. @ $100 | Hours ½ Comp. @ $75 | Hours Not Comp. | Hours Full Comp. @ $75 | Hours Comp. @ $65 | Hours Comp. @ $50 | Hours Not Comp. | Hours Full Comp. @ $40 | Hours Comp. @ $35 | Hours Comp. @ $30 | Hours Not Comp. | |
| CONF. CLIENTS/ CLASS MEM. | 58.80 | -- | 2.50 | -- | -- | -- | 1.50 | -- | -- | -- | -- | -- | 62.80 |
| CONF. EXPERT | 75.70 | -- | 1.20 | -- | -- | -- | 1.20 | -- | -- | -- | -- | -- | 78.10 |
| FACTS & LAW | 518.90 | -- | 4.25 | 4.00 | -- | -- | -- | -- | -- | -- | -- | -- | 527.15 |
| DISCOVERY | 302.50 | -- | .25 | -- | -- | -- | -- | -- | -- | -- | -- | -- | 302.75 |
| DOCUMENT PREP. | 375.20 | -- | 3.00 | -- | -- | -- | .60 | -- | -- | -- | -- | -- | 378.80 |
| COURT APPEAR. ETC. | 40.45 | -- | 1.10 | -- | 2.60 | -- | -- | -- | -- | -- | -- | -- | 44.15 |
| GENERAL | -- | 229.05 | 5.00 | .20 | -- | 1.75 | .30 | -- | -- | -- | -- | -- | 236.30 |
| SETTLEMENT PROMOTIONS | 123.80 | -- | 2.90 | -- | 35.95 | -- | -- | -- | -- | -- | -- | -- | 162.65 |
| SETTLEMENT PROCEDURES | -- | -- | 28.50 | -- | -- | -- | 20.00 | -- | -- | -- | 42.85 | -- | 91.35 |
| FEE APPL. PREP. | -- | -- | -- | 38.40 | -- | -- | -- | -- | -- | -- | -- | .10 | 38.50 |
| | 1,495.35 x150 224,302.50 x1.25 280,378.13 | 229.05 x100 22,905 | 48.7 x75 3652.50 | 42.60 | 38.55 x75 2891.25 | 1.75 x65 113.75 | 23.60 x50 1,180 | -- | -- | -- | 42.85 x30 $1,285.50 | .10 | 1,922.55 |
| (CONT. FCTR.) | $306,935.63 | | | | + $ 4,185.00 | | | | + | | $1,285.50 | | |

ADDITIONAL HRS. NOT COMP.
25.00 Post Settlement Activity
49.80 Applic. for Fees
74.80

$312,406.13
39,260.10
$351,666.23    TOTAL AWARD