REFUSE & ENVIRONMENTAL
SYSTEMS, INC. and Richard
V. Bisesti, Plaintiffs,

v.

INDUSTRIAL SERVICES OF AMERICA,
d.b.a. Computerized Waste Systems,
Inc., Harry Kletter, Joseph Freedman,
Paul Burke, Daniel Goodman, David
Goodman, Samuel Rosenberg, and John
Doe(s), Defendants.

Civ. A. No. 85–0375–F.

United States District Court,
D. Massachusetts.

March 9, 1990.

See also, 120 F.R.D. 8.

George F. Kelly, Ryan & White, Springfield, Mass., and John J. Pribish, N. Brunswick, N.J., for plaintiffs.

**1212**

Charles Bergin, Robinson Donovan Madden & Barry, P.C., Springfield, Mass., for defendant Computerized Waste.

Edward Donnellan, Keyes & Donnellan, Springfield, Mass., for defendants Kletter, Computerized Waste, Freedman and Burke.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

## I. INTRODUCTION

Plaintiff Richard V. Bisesti ("Bisesti") and his upstart company, plaintiff Refuse & Environmental Systems, Inc. ("R & E"), filed suit against the named defendants on September 9, 1985. In a lengthy complaint, plaintiffs sought relief on six counts, including violations of the federal antitrust laws, the Massachusetts Consumers Protection Act, and Massachusetts tort law.[1] After trial, a jury awarded damages to plaintiffs on four of the five counts presented for jury consideration. The jury awarded plaintiff R & E $43,050.00 against defendant Industrial Services of America ("Industrial Services" or "CWS")[2] on Count I for violation of section 4 of the Clayton Act, 15 U.S.C. § 15. The jury also found Industrial Services liable to R & E on Count II for interference with R & E's prospective economic gain and contractual relations. The jury awarded $151,990.00 for this wrong. On Count III, a claim for slander, the jury found defendants Joseph Freedman and Harry Kletter liable to plaintiff Bisesti for $100,000 each. On Count V, the jury awarded plaintiffs a total of $6,000.00 for abuse of process, payable in equal parts by defendants Freedman and

Kletter. *See* Special Interrogatories (March 30, 1989).[3]

A sixth count, brought under the Consumers Protection Act, Mass. Gen. Laws ch. 93A, § 2, was decided by the Court after the jury rendered its verdicts. The Court found that defendants Freedman and Kletter were liable for unfair and deceptive acts within the meaning of section 2. Accordingly, the Court ordered Freedman and Kletter to pay $10,000.00 each for the chapter 93A violations.

Both sides have filed post-trial motions. A total of five motions have been filed, and these are presently before the Court. (1) Plaintiff R & E has filed a motion for amended findings. R & E asks this Court to treble the damages awarded under Count I pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15. R & E also requests that the damages awarded under Count II and Count V be trebled pursuant to chapter 93A. (2) R & E has filed a motion for an award of attorney's fees pursuant to both the Clayton Act and chapter 93A. (3) Plaintiffs have moved for an order requiring that defendants bear the entire cost of the trial transcript.[4] Defendants oppose these motions.

Like plaintiffs, defendants seek to modify the verdict in a direction favorable to them. (4) Defendant Freedman has filed a motion for relief from the verdict as to Count III. (5) Defendants have filed a motion for a declaration that damages will be awarded in the alternative, that is, that R & E must choose between Count I damages and Count II damages. Plaintiffs oppose defendants' motions. Now, with the

---

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1337, and the Clayton Act, 15 U.S.C. § 15. Principles of pendent jurisdiction support the assertion of federal court jurisdiction over the related state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

2. Evidence and testimony at trial revealed that Industrial Services of America was doing business in the waste management business under the name of Computerized Waste Systems, Inc. *See, e.g.,* Trial Transcript at 498–501 (testimony of Kletter).

3. The jury verdict on Count IV, a claim for interference with Bisesti's prospective economic gain and contractual relations, is not at issue. The jury found in defendants' favor on this count, and plaintiff has not expressed any objection.

4. The Court, finding the transcript necessary to decide the instant motions, compelled the parties to produce the transcript and to share equally the cost thereof. *Refuse & Environmental Systems, Inc., et al. v. Industrial Services of America, et al.,* Civ.Action No. 85–0375–F, Order (Dec. 15, 1989).

assistance of the voluminous transcript and a plethora of memoranda from the parties, the Court must render its decision on these five motions.

## II. DISCUSSION

### A. Plaintiff R & E's Motion for Treble Damages Pursuant to 15 U.S.C. § 15

■ The jury returned a verdict against defendant Industrial Services on Count I, finding that Industrial Services was liable for antitrust violations in the sum of $43,-050.00

Under section 4 of the Clayton Act, 15 U.S.C. § 15, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in [the] district court of the United States ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." The statutory language is clear. This Court, operating under a mandate from Congress must treble damages awarded for the antitrust violation. Such damages provide for private relief, and serve the "high purpose of enforcing antitrust laws." *Zenith Corp. v. Hazeltine,* 395 U.S. 100, 131, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969).

Defendant Industrial Services is hereby ordered to pay, pursuant to 15 U.S.C. § 15, three times the damages awarded by the jury on Count I, that is, $129,150.00.[5]

### B. Plaintiff R & E's Motion for Multiple Damages Under Massachusetts General Laws Chapter 93A

■ The legislature enacted chapter 93A to provide a remedy for those persons injured by unfair and deceptive practices. *Heller v. Silverbranch Construction Corp.,* 376 Mass. 621, 382 N.E.2d 1065, 1069 (1978). "Section 2, the substantive heart of c. 93A, makes 'unfair and deceptive practices in the conduct of any trade or commerce' unlawful." *Id.* A plaintiff

need not prove common law or statutory causes of action as a basis for chapter 93A recovery. *Commonwealth v. DeCotis,* 366 Mass. 234, 316 N.E.2d 748, 754 (1974). Instead, chapter 93A "establishe[s] new procedural devices to aid consumers and others ... [and] also create[s] new substantive rights by making conduct unlawful which was not unlawful under the common law or any prior statute." *Id.* 316 N.E.2d at 755 n. 8.

■ Damages awarded under chapter 93A are "in addition to, and not an alternative to, traditional tort and contract remedies." *Linthicum v. Archambault,* 379 Mass. 381, 398 N.E.2d 482, 485 (1979). A plaintiff may collect damages for both a common law or statutory cause of action, and a chapter 93A violation where a separate basis for recovery exists for each. It is "error for the trial judge to refuse relief under chapter 93A because it was 'unnecessary to secure adequate relief for said plaintiff' or because the plaintiff would thereby find herself 'in a better position than she would have been in had the defendant fulfilled his contractual obligations.'" *Linthicum,* 398 N.E.2d at 485.

However, the traditional judicial axiom that a plaintiff may not collect duplicative damages applies to chapter 93A actions. "[W]here the same acts cause the same injury under more than one theory ... duplicative damage recoveries will not be permitted." *Calimlim v. Foreign Car Center, Inc.,* 392 Mass. 228, 467 N.E.2d 443, 448 (1984). There must be separate bases for recovery under the different theories. Plaintiff may not allege one set of facts and collect under two theories for the same wrongful conduct. A rule to the contrary would result in cumulative recovery, which the Supreme Judicial Court has expressly prohibited. *Id.* 467 N.E.2d at 447–48.

---

5. Case law in this and other jurisdictions clearly indicates that the Court correctly abstained from alerting the jury to the treble damages provision of 15 U.S.C. § 15. *CVD, Inc. v. Raytheon Co.,* 769 F.2d 842, 860 (1st Cir.1985); *Pol-* *lock & Riley, Inc. v. Pearl Brewing Co.,* 498 F.2d 1240, 1242 (5th Cir.1974); *Semke v. Enid Automobile Dealers Association,* 456 F.2d 1361, 1370 (10th Cir.1972).

■ Chapter 93A, § 11 provides in relevant part as follows:

> If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two.

Thus, chapter 93A demands that a court at least double the award of actual damages sustained by a plaintiff *as a result of a chapter 93A violation* if that violation is deemed "willful." Chapter 93A does not, however, allow the court to double or treble damages awarded by a jury on claims not brought under chapter 93A. This is true despite the willful nature of the acts.

■ After the jury returned its verdicts in the instant case, the Court awarded plaintiff damages on Count VI for the chapter 93A violations.[6] The Court held that Kletter and Freedman had each caused $10,000.00 actual damages to plaintiffs as a result of unfair and deceptive practices, and the defendants were held liable for that amount, in addition to the damages awarded by the jury. The tort damages awarded by the jury on Counts II and V are not subject to increase under chapter 93A. Instead, the language of chapter 93A, § 11 provides that the court must double, and may treble, only the actual damages awarded for the chapter 93A violation.

In this case, the Court found a separate basis for chapter 93A violations. The Court found that the defendants, in bringing the state lawsuit in spite of the evidence, willfully committed an unfair and deceptive practice within the meaning of chapter 93A, §§ 2 and 11. Chapter 93A offers a remedy to plaintiffs who have been forced to litigate claims that clearly lack merit. *Heller*, 382 N.E.2d at 1071; *International Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 443 N.E.2d 1308, 1318 (1983). Thus, the Court awarded actual damages in the sum of $20,000.00, payable in equal parts by defendants Freedman and Kletter. This amount must be doubled, and may be trebled if the Court in its discretion deems such an award appropriate.

Multiple damage awards allowed under section 11 serve to discourage the use of deceptive trade practices in business, and "encourage victims to avail themselves of these legal remedies, thus giving chapter 93A greater practical effect." *Evans v. Yegen Associates, Inc.*, 556 F.Supp. 1219, 1235 (D.Mass.1982). With the goal of chapter 93A in mind, this Court will consider the egregiousness of the violation, the deterrence value of multiple damages, the practical effect on the parties of the award, and other relevant factors to decide whether to treble the damages. After carefully considering the facts of this case, the Court decides to award double, but not treble damages. Treble damages are most appropriate in consumer cases where the victims are vulnerable individuals with limited resources. The *Evans* court states that:

> [a]lthough the goals of the multiple damages provisions are similar in consumer and commercial victim actions, the considerations bearing on implementation may differ. As a practical matter, most commercial victims stand in a significantly stronger position than do consumers to avail themselves of legal remedies for deceptive trade practices. In the commercial context, therefore, double damages, when combined with compensation for attorneys' fees and costs, often may adequately serve the purposes of the multiple damages provision.

*Evans*, 556 F.Supp. at 1235.

The Court, finding that double damages serve both the remedial and deterrence goals of chapter 93A, holds that higher damages are unnecessary. Thus, plaintiff R & E is entitled to collect $40,000.00, or twice the $20,000.00 actual damages awarded for the chapter 93A violation, payable in

---

6. The Court properly reserved to itself the decision on the chapter 93A claim. Massachusetts law provides no right to trial by jury under chapter 93A. *Nei v. Burley*, 388 Mass. 307, 446 N.E.2d 674, 677–79 (1983).

equal parts by defendants Kletter and Freedman.

### C. Attorney's Fees and Costs of Litigation

Title 15, U.S.C. § 15(a) provides that any person injured as a result of an antitrust violation "shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee." Chapter 93A, section 11 similarly provides that "the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action." In short, this Court operates under mandates from the United States Congress and the Massachusetts legislature to award attorney's fees and costs to plaintiff in this case.[7] The award of "reasonable" attorney's fees incurred in prosecution of the antitrust claim and the chapter 93A claim is mandatory. This Court must only determine what award is reasonable.

#### 1. Attorney's Fees

■ In Massachusetts, chapter 93A attorney's fees awards must be determined in accordance with the Supreme Judicial Court's ("SJC") decisions in *Heller, supra* and *Linthicum, supra.* In *Heller,* the SJC set forth some factors that courts should consider in determining a reasonable attorney's fee under chapter 93A.[8] The goal, the court states, is to award reasonable attorney's fees based on what the services were "objectively worth." *Heller,* 382 N.E.2d at 1071. The crucial factors are "(1) how long the trial lasted, (2) the difficulty of the legal and factual issues involved, and (3) the degree of competence demonstrated by the attorney." *Id.*

A year later, the SJC expanded the crucial factors list from *Heller.* In *Linthicum,* the SJC decided that a court, in fixing attorney fees under chapter 93A, should consider:

> the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.

*Linthicum,* 398 N.E.2d at 488.

However, under federal law, in cases involving federal fee-shifting provisions, courts must determine attorney's fees using the lodestar approach. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir. 1984); *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980). The lodestar approach applies to cases arising under the Clayton Act. *Home Placement Service v. Providence Journal Co.,* 819 F.2d 1199, 1210 (1st Cir.1987); *Illinois v. Sargamo,* 657 F.2d 855, 863 (7th Cir.1981). "The 'lodestar'—a threshold point of reference which is subject to additions or deductions for specific reasons—is determined by multiplying the total number of hours reasonably spent by a reasonable hourly rate."[9] *Grendel's Den,* 749 F.2d at 950; *Furtado,* 635 F.2d at 920. Because the Court finds that the result under state law for chapter

---

**7.** Note that the award is made to plaintiff, not to plaintiff's counsel. *Farmington Dowel Products Co. v. Forster Mfg. Co.,* 421 F.2d 61, 88 (1st Cir.1970); *Union Leader Corp. v. Newspapers of New England, Inc.,* 218 F.Supp. 490, 494 (D.Mass.1963), *vacated on other grounds,* 333 F.2d 798 (1st Cir.1964). This is also true in the chapter 93A context. *Patry v. Liberty Mobilehome,* 15 Mass.App.Ct. 701, 448 N.E.2d 405, 409 (1983).

**8.** Because the instant case involves parties engaged in the conduct of trade or commerce, plaintiff will collect attorney's fees under section 11. *Heller* involved an award under section 9, designed to afford chapter 93A remedies to individual consumers. Because the two sec-

tions have identical requirements as to the award of reasonable attorney's fees, the law developed in section 9 cases as to attorney's fees applies with equal force in section 11 situations. *See Linthicum,* 398 N.E.2d at 488.

**9.** The Supreme Court has decided that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982). Thus, without using the lodestar label, the Supreme Court has adopted a fee determination method with precisely the same mechanics.

93A would be substantially similar to a result under the lodestar, the Court will determine attorney's fees based on all work done by plaintiff's counsel in the entire action using the lodestar method.[10]

Under the lodestar method, the Court must first determine what hourly wage should apply to the time expended. Next, the Court must inspect counsel's time sheets to determine the number of hours reasonably expended on the case. In making these determinations, the Court will consider the factors enumerated in *Farmington Dowel Products Co. v. Forster Mfg. Co.*, 421 F.2d 61 (1st Cir.1970). In *Farmington*, the First Circuit Court of Appeals held that the following factors were "appropriate ... for a determination of reasonableness" of attorney's fees in the Clayton Act context. *Id.* at 89.

> (1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government; (2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel; (3) the time and labor spent by counsel; (4) the magnitude and complexity of the litigation; (5) the responsibility undertaken by counsel; (6) the amount recovered; and (7) the knowledge the court has of the conferences,

the arguments that were presented and the work shown by the record to have been done by the attorneys for the plaintiff prior to trial.

*Farmington Dowel Products Co. v. Forster Mfg. Co.*, 297 F.Supp. 924, 925–26 (D.Me.1969).

The Court of Appeals also stated that the factors contained in Canon 12 of the American Bar Association Canon of Ethics should properly be considered in deciding whether a fee award is "excessive." *Farmington*, 421 F.2d at 90.[11] While there is some overlap, this Court feels that the *Farmington* factors and Canon 12 together provide a fair and accurate means of measuring the reasonableness of attorney's fees. Of course, the final determination as to the reasonableness of the attorney's fees is firmly entrusted to the discretion of the Court. *Jacobs v. Mancuso*, 825 F.2d 559, 564 (1st Cir.1987); *Farmington*, 421 F.2d at 87–88.

■ In past cases, this Court has made the distinction between "core" and "non-core" legal work. *See DaSilva v. Secretary of Health and Human Services*, Civ. Action No. 84–0046–F, slip op., —— WL —— (D.Mass. October 16, 1989). Core legal work includes time spent on the research and writing of memoranda, motions

---

**10.** Massachusetts state law is less rigid and formulaic than the federal lodestar method. The lodestar method, as mentioned above, requires the court to multiply a reasonable number of hours by a reasonable rate of compensation. Under Massachusetts law, however, "[a] judge presiding over the action for which the plaintiff seeks reasonable attorney's fees ... can discern from his own experience as a judge and expertise as a lawyer, the amount that the attorney should be paid." *Heller*, 382 N.E.2d at 1071. Using the enumerated factors, *see supra* at 1215, and his own "firsthand knowledge," the judge under Massachusetts law must determine what the services are "objectively worth." *Id.*

The Court believes that a lodestar calculation can also accurately determine what the legal services proffered for chapter 93A are "objectively worth." The factors articulated by the courts for determining attorney's fees under both section 4 of the Clayton Act and section 11 of chapter 93A are largely the same. Thus, the Court will use the lodestar method to award attorney's fees under both the Clayton Act and chapter 93A.

**11.** Canon 12 of the Canons of Professional Ethics of the American Bar Association reads as follows:

> In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

and other legal documents. All time spent advising clients, devising trial strategies, and arguing before the Court is also core legal work. Non-core legal work consists of less demanding tasks, such as telephone conversations, interviews, letter writing, and fee application preparation. *Id.* at 3. "The court need not set the same rate for all work performed by a particular attorney; it may assign a different hourly rate to different categories of tasks." *M. Berenson Co. v. Faneuil Hall Marketplace,* 671 F.Supp. 819, 831 (D.Mass.1987).

Plaintiffs have made some ballpark suggestions regarding the hourly wage that the Court should adopt for this case. Plaintiffs' Memorandum for Order Requiring Defendants to Pay Plaintiffs' Attorney Fees and Costs 3–4 (June 28, 1989). Plaintiffs' counsel has brought attention to a ten-year old decision by this Court, in which the Court awarded $150.00 an hour for legal work performed by a prominent Boston attorney. *HEW Corp. v. Tandy Corp.,* 480 F.Supp. 758, 762 (D.Mass.1979) (Freedman, J.). The Court awarded $40.00 an hour for work "of a general nature" done by an associate on the same case. *Id.*

Attorney Pribish has suggested that the Court adopt $210.00 an hour as the hourly wage for his work. Attorney Kelly, of the firm Ryan & White, P.C., contends that partners at his firm should receive $225.00 per hour, and that associates at the firm be paid lesser sums based on their individual experience and expertise. Both Attorney Pribish and attorneys for Ryan & White, P.C. have submitted affidavits proclaiming their experience and expertise with regard to the legal issues involved in the instant case, and have suggested that this Court award attorney's fees accordingly.[12]

■ The Court notes that plaintiff's attorneys did a fine job in presenting, briefing and arguing the factual and legal issues in this case. Counsel conducted effective examination of the witnesses at trial, and was adequately prepared to argue in-

telligently at trial. The Court also notes that counsel obtained a favorable result for the client. The result is what matters. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. The time sheets and counsel's performance at trial indicate a substantial commitment of time and labor to the case throughout the pre-trial, litigation and post-trial stages of the case. Based on all of this, and on counsel's education, experience and reputation, and on counsel's familiarity with this area of the law, as well as the circumstances of the case, the quality of representation, and the hourly rates assigned by this and other courts,[13] an hourly rate of $175.00 will be used in computing the lodestar figure for core legal work done by Attorney Pribish and partners at Ryan & White. The Court will award $90.00 an hour for non-core work done by these experienced lawyers. The Court will award $100.00 per hour for core work done by associates, and $75.00 per hour for non-core work done by them. Core work performed by law clerks will be compensated at $45.00 per hour. Law clerks' non-core work will earn $25.00 per hour.

Next, the Court must determine the number of hours "reasonably expended" by counsel in representing plaintiff in this matter. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939; *Bordanaro v. McLeod,* 871 F.2d 1151, 1167 (1st Cir.1989). The Court must consider the time sheets submitted by plaintiff's counsel, and must review them to ascertain the reasonableness of all that is claimed. *Bordanaro,* 871 F.2d at 1167–68; *Grendel's Den,* 749 F.2d at 950. This Court has large discretion in the area of determining the amount of time reasonably expended, and this determination is final absent an abuse of discretion. *Wojtkowski v. Cade,* 725 F.2d 127, 130–31 (1st Cir. 1984).

■ The Court is persuaded by defendants' argument that some time billed by both Ryan & White, P.C. and Attorney Pribish is unreasonably duplicative. De-

---

**12.** Attorney John J. Pribish of New Jersey seeks $81,001.00 in fees. Ryan & White, P.C. of Springfield, Massachusetts requests $44,363.50.

**13.** *Berenson,* 671 F.Supp. at 834 (a reasonable attorney's fee for a partner at a Boston firm lies within the $160–$250 per hour range).

fendants' Brief in Opposition to Plaintiffs' Motions 8–9 (August 16, 1989). Specifically, the Court notes that Attorney Pribish billed approximately thirty hours of telephone calls while talking to co-counsel Kelly at Ryan & White. While the Court does not completely reject compensation for this time, the number of hours reasonably expended by both Ryan & White and Pribish will be adjusted to reflect the duplicative nature of compensation for the calls.

■ Attorney Pribish also seeks compensation for time expended by a law clerk to leave a telephone message, to travel to and from the library, and the like. The attorney fee provisions of chapter 93A and the Clayton Act could not have been designed to compensate for this kind of time.

Likewise, time such as this is not "reasonably expended" for lodestar purposes. Accordingly, the Court makes an appropriate adjustment to Attorney Pribish's claimed law clerk hours.

The Court has carefully reviewed and scrutinized counsel's time sheets, and has taken pains to equitably separate "core" from "non-core" time. The Court has, to the extent possible, separated work done by partners from work done by less experienced counsel. The Court has also adjusted billable hours where necessary to account for time not "reasonably expended." [14]

The lodestar figures have been calculated thusly:

## RYAN & WHITE, P.C.

|  | Hours | | Rate | Total |
|---|---|---|---|---|
| **Attorney George F. Kelly** | | | | |
| Core | 160.00 | × | $175 = | $28,000.00 |
| Non-core | 40.00 | × | 90 = | 3,600.00 |
| **Other Partners** | | | | |
| Core | 19.20 | × | $175 = | 3,360.00 |
| Non-core | 13.10 | × | 90 = | 1,179.00 |
| **Associates** | | | | |
| Core | 60.00 | × | 100 = | 6,000.00 |
| Non-core | 5.00 | × | 75 = | 375.00 |
| | | | LODESTAR FIGURE = | $42,514.00 |

## OFFICES OF JOHN J. PRIBISH

|  | Hours | | Rate | Total |
|---|---|---|---|---|
| **Attorney John J. Pribish** | | | | |
| Core | 180.00 | × | $175 = | $31,500.00 |
| Non-core | 100.00 | × | 90 = | 9,000.00 |
| **Associates** | | | | |
| Core | 135.00 | × | 100 = | 13,500.00 |
| Non-core | 40.00 | × | 75 = | 3,000.00 |
| **Law Clerks** | | | | |
| Core | 165.00 | × | 45 = | 7425.00 |
| Non-core | 3.00 | × | 25 = | 75.00 |
| | | | LODESTAR FIGURE = | $64,500.00 |

**14.** For example, in September and October of 1985, Attorney Pribish made telephone calls to the offices of Attorney Kelly and Attorney Jaffe. Apparently, counsel did not converse. Instead, Attorney Pribish left messages. The Court hesitates to include as time "reasonably expended" the few minutes it takes to leave a telephone message.

The Court has also made downward adjustments for travel time expended by counsel, *see Furtado*, 635 F.2d at 922, and has carefully scrutinized time billed for the proofreading and revising of memoranda and letters.

The lodestar figure is "subject to additions or deductions for specific reasons...." *Grendel's Den,* 749 F.2d at 950. These reasons include the quality of representation, the result obtained, the contingent nature of success in the action, and other factors. *Furtado,* 635 F.2d at 920; *Copeland v. Marshall,* 641 F.2d 880, 892–94 (D.C.Cir.1980). But in the end, "the determination of the 'reasonable attorney's fee' to be awarded is entrusted to the sound discretion of the district court...." *Home Placement,* 819 F.2d at 1210, *citing Farmington,* 421 F.2d at 87.

■ The Court recognizes that while plaintiffs prevailed on Counts I and VI, the antitrust and chapter 93A claims, plaintiffs also incurred attorney's fees in pursuit of four tort claims under state law. The traditional American rule requires that a litigant bear his own expenses, and this rule applies absent a statute explicitly shifting the fee burden. *Linthicum,* 398 N.E.2d at 488; *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1974). Thus, while plaintiffs in this case may recover attorney's fees expended for the antitrust and chapter 93A claims, plaintiffs may not recover attorney's fees for the other four claims.

■ The problem in this case, of course, is that plaintiff cannot reasonably and accurately separate time spent on Counts I and VI from time spent on the remaining counts. Although the Court would usually demand that an accounting of time spent on each claim be provided by plaintiff's counsel, *Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984), the Court feels that in a case of this nature such an accounting would be an unnecessary and difficult administrative burden. All the claims in this lawsuit are related in that discussion or preparation for the antitrust or chapter 93A claims necessarily involves the other claims. All the claims arise out of the

same background of wrongdoing by defendants. The abuse of process and slander claims, for example, are inextricably bound to the antitrust claim. The fact that defendants were responsible for slanderous statements and instigated "sham" litigation undoubtedly indicated to the jury that Industrial Services willfully attempted to maintain its market share in violation of the antitrust laws. Given this close relationship between the claims, the Court concludes that the time sheets provided by counsel are adequate. Therefore, it becomes the duty of this Court to separate, to the extent possible, the attorney's fees incurred for Counts I and VI from fees incurred for the other claims. This determination is one well within this Court's discretion. *Home Placement,* 819 F.2d at 1210, *citing Farmington,* 421 F.2d at 87; *Linthicum,* 398 N.E.2d at 488–89.

To account for the time expended by counsel on the state law claims, the Court will reduce by twenty-five percent the lodestar figure as calculated above. This decision seems reasonable in light of the close nexus between the claims. The Court recognizes that some of the time spent on research, writing and trial preparation was necessarily expended with regard to all claims alike. This Court knows of no other method by which time spent on the antitrust and chapter 93A claims could reasonably and accurately be separated from time spent on the other facets of this complex case. The Court will not attempt to sort the salt from the sugar. The Court relies on the First Circuit's decision in *Home Placement* for the notion that an across-the-board fractional reduction in a fee award is a proper method of resolving fee dilemmas of this nature. *Home Placement,* 819 F.2d at 1212. The Court finds this approach especially appropriate where the claims for which recovery of attorney's fees is allowed are closely related to the other claims. Therefore, the Court makes a twenty-five percent downward adjustment to the lodestar figures. The Court finds no other factors that would warrant either an upward or a downward shift in the lodestar.[15] This calculation produces a

15. Note that the Court adjusted the number of

billable hours reasonably expended before cal-

fee fair and reasonable in light of the complexities of the case. The arithmetic is as follows:

RYAN & WHITE, P.C.

| Lodestar | Fractional Reduction | Total Fee Award |
|---|---|---|
| $42,514.00 | × .75 = | $31,885.50 |

OFFICES OF JOHN J. PRIBISH

| | | |
|---|---|---|
| $64,500.00 | × .75 = | $48,375.00 |

Defendants Industrial Services of America, Kletter and Freedman are hereby ordered to pay, as an award of attorney's fees under 15 U.S.C. § 15 and Mass.Gen. Laws ch. 93A, § 11, the sum of $31,885.50 for services rendered by Ryan & White, P.C. and the sum of $48,375.00 for services rendered by Attorney John J. Pribish. These amounts shall be paid to plaintiff R & E.[16] The parties are jointly and severally liable for the entire amount. *See Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia*, 543 F.Supp. 126, 152–53 (E.D.Va.1982).

2. Costs

■ Defendants object to the costs claimed by plaintiffs under the Clayton Act and chapter 93A, § 11. They argue that costs, as provided by the Clayton Act, are limited by 28 U.S.C. § 1920 and by Fed.R. Civ.P. 54(d). Defendants' Brief in Opposition to Plaintiffs' Motion 9–10 (August 16, 1989). Cases from various circuits lend support to defendants' view. *State of Illinois v. Sargamo Construction Co.*, 657 F.2d 855, 866 (7th Cir.1981); *Berkey Photo,*

*Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 n. 75 (2d Cir.1979); *Ott v. Speedwriting Publishing Co.*, 518 F.2d 1143, 1149 (6th Cir.1975). However, the Court finds that many authorities support the opposite view. These cases hold that where a federal fee-shifting statute expressly provides for costs, recovery of litigation expenses are not precluded by section 1920 or Rule 54(d). *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1100–1101 (5th Cir.1982); *Alexander v. National Farmers Organization*, 696 F.2d 1210, 1212 (8th Cir. 1982) (adopting a "liberal" interpretation of Clayton Act). *Pitchford Scientific Instruments Corp. v. PEPI, Inc.*, 440 F.Supp. 1175, 1178–79 (W.D.Pa.1977).

The First Circuit Court of Appeals has not taken a firm position on the issue of whether costs recoverable pursuant to the Clayton Act are limited to those costs allowed by 28 U.S.C. § 1920 and Rule 54(d). However, the First Circuit has had the opportunity to consider the same cost issue under a federal civil rights statute, 42 U.S.C. § 1988.[17] In *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir.1983), the First Circuit Court of Appeals held that section 1920 does not preclude the taxing of costs, including travel and out-of-pocket expenses, against a defendant in a successful section 1988 claim. *Accord Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1188–89 (11th Cir.1983) ("where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply").

culating the lodestar. *Accord Grendel's Den,* 749 F.2d at 952–55. Thus, some factors that might have justified an upward or downward adjustment of the lodestar have already been taken into account. *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 651 (7th Cir.1985) (under section 4 of the Clayton Act, the court adjusts the number of hours actually worked to obtain the number of hours reasonably expended, and then multiplies by a reasonable hourly wage).

**16.** The fees and costs awards shall be paid to R & E, and not to Bisesti in his individual capacity, for two reasons. First, the jury found Industrial Services liable to R & E, not Bisesti, for antitrust violations. *See* Special Interrogatories

(March 30, 1989). Second, the Court's finding on the chapter 93A count is meant to redress the wrongs committed by defendants Kletter and Freedman against R & E as a business, not as an extension of Bisesti's person.

**17.** Title 42 U.S.C. § 1988 provides that the court "may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Compare this language to the language in 15 U.S.C. § 15, which allows a prevailing party to recover "the costs of the suit, including a reasonable attorney's fee." The Court finds that the statutory language is similar, enough so that First Circuit cases involving cost determinations under section 1988 can be useful in resolving a cost dilemma under the Clayton Act.

This Court is also persuaded by the reasoning of other circuit courts on the issue of costs allowed in antitrust cases. In *Copper Liquor, supra,* Judge Rubin reasoned as follows:

> Three circuits have held that the Clayton Act, 15 U.S.C. § 15, in allowing the recovery of the "cost of suit, including a reasonable attorney's fee" uses the word "cost" in the same sense as the word "costs" in § 1920 and that the statute precludes the recovery of expenses of litigation not taxable as costs. Despite these decisions it is arguable that, as Professor Moore points out, "had Congress intended 'cost of suit' to include only taxable costs, it would have said so." The interpretation suggested by Professor Moore appears not only to be a logical reading of the statute, but also is consonant with congressional policy. Allowing a prevailing party treble damages and attorneys' fees but denying recovery for expenses incident to litigation would be anomalous. Accordingly, we hold that the word "cost" in the Clayton Act embraces all the ordinary and reasonable expenses of litigation.

684 F.2d at 1100 (*citing* 6 J. Moore, W. Taggart, J. Wicker, Moore's Federal Practice ¶ 54.71[3] (2d ed. 1982)).

In *Alexander, supra,* the court determined that plaintiff could, in a Clayton Act case, recover expenses incurred for air fare, meals, lodging, telephone, express mail, and other expenses. "This award is consistent with our allowing only reasonable attorneys' fees and court costs, and with the goal of encouraging private enforcement of the anti-trust statutes." *Alexander,* 696 F.2d at 1212. In *Alexander,* therefore, neither Rule 54(d) nor section 1920 acted to limit the award of costs incurred by plaintiffs in the litigation.

Based on case law in the first, fifth, eighth and eleventh circuits, under both 15 U.S.C. § 15 and 42 U.S.C. § 1988, the Court holds that plaintiffs must be awarded the reasonable costs of bringing the antitrust lawsuit, beyond those costs allowed by Rule 54(d) and section 1920.

Plaintiffs must also recover for the costs and expenses of the successful action under chapter 93A. Chapter 93A, § 11 provides that the successful plaintiff "shall ... be awarded reasonable attorney's fees and costs incurred in said action." The SJC has decided that where section 11 authorizes an award of costs, trial courts are vested with the discretion to determine the size of the award. *Linthicum,* 398 N.E.2d at 489. An award of costs is recoverable under chapter 93A, as it is under the Clayton Act, to vindicate the policies of the statute. *Id.* at 488.

The statutory language in the Clayton Act and chapter 93A is clear. Plaintiffs may recover costs associated with the antitrust claim and chapter 93A claim, but may not recover costs associated with other claims. Thus, the Court will determine a reasonable cost figure and reduce that amount by twenty-five percent for reasons set forth at pages 1219–20, supra.

The Court has carefully reviewed the expenses listed by Ryan & White and Attorney Pribish.[18] The Court notes that out of his $9,045.01 itemized costs, Attorney Pribish claims to have spent more than $1,000 on photocopying alone. However accurate this may be, the Court finds it excessive. The Court believes that photocopying costs should be approximately $500.00 in a case such as this, and the Court therefore makes a downward adjustment to Attorney Pribish's reported costs in the amount of $500.00. Ryan & White's costs appear in sum to be more reasonable, and absent any objections by defendants to specific cost items, Ryan & White's claimed cost total will not be adjusted.[19]

The Court calculates the costs thusly:

---

18. In *Grendel's Den, supra,* the First Circuit Court of Appeals closely scrutinized the expense sheets submitted by counsel. 749 F.2d at 956–57. This Court gives similar scrutiny to the itemized lists submitted in this case.

19. This cost calculation does not include the costs of the trial transcript. Because the parties have addressed that issue separately, the Court will do so as well. *See infra* at 1224.

| | | |
|---|---|---|
| Attorney Pribish | $8,545.01 × .75 = | $6,408.75 |
| Ryan & White, P.C. | $1,738.96 × .75 = | $1,304.22 |

Defendants Industrial Services, Kletter and Freedman are hereby ordered to pay to plaintiff R & E the sum of $6,408.75 for costs incurred by Attorney Pribish, and the sum of $1,304.22 for costs incurred by Ryan & White, P.C. *See* footnote 16, *supra*.

### D. Defendant Freedman's Motion for Judgment Notwithstanding the Verdict

Defendant Freedman has moved for relief from the jury verdict as to Count III. In essence, this motion is one for judgment notwithstanding the verdict ("judgment n.o.v.") pursuant to Federal Rule of Civil Procedure 50(b), and the Court will treat it as such. The jury found Freedman, along with defendant Kletter, liable for slander, and awarded damages against Freedman in the sum of $100,000. Freedman contends that "there is not any evidence associating or attributing slanderous words from the lips of Freedman directed at the plaintiff, Bisesti." Defendant Freedman's Motion for Relief from Verdict 2 (August 14, 1989). Thus, Freedman argues that the jury erred, and that this Court should set aside the verdict to the extent that it holds him liable for slander.[20]

Plaintiff, of course, opposes the motion. Plaintiff contends that Freedman "participated in a common scheme with the defendant Kletter to instigate litigation against the plaintiff and then communicate such information to third parties...." Plaintiff's Brief in Opposition to Defendant Freedman's Motion for Relief from Jury Verdict 3 (September 25, 1989). Plaintiff argues that Freedman's role in the scheme finds support in the evidence disclosed at trial, and that the Court should not disturb the jury's finding.

"When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by nonsuit, directed verdict ... or by judgment notwithstanding the verdict." *Brady v. Southern Railway Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943). A party's motion for judgment n.o.v. should be granted if, viewing evidence and reasonable inferences in a light most favorable to the non-moving party, reasonable men would nonetheless find in the movant's favor. *Jordan v. United States Lines, Inc.*, 738 F.2d 48, 49 (1st Cir.1984) (citations omitted); *accord deMars v. Equitable Life Assurance Society*, 610 F.2d 55, 57 (1st Cir.1979). This Court will not grant a judgment n.o.v. unless the jury's verdict is untenable under any reasonable assessment of the evidence and testimony adduced at trial.

Under Massachusetts law, two or more persons engaged in a common scheme to publish defamatory words are jointly liable for the remarks. *Pascale v. Emery*, 95 F.Supp. 147, 148 (D.Mass.1951); *Miller v. Butler*, 60 Mass. (6 Cush.) 71, 74 (1850); *Finnish Temperance Society Sovittaja v. Finnish Socialistic Publishing Co.*, 238 Mass. 345, 355, 130 N.E. 845 (1921). The Court now holds that this principle applies to all cases of defamation, by mouth, by printed page, or otherwise.

The jury's verdict on Count III finds adequate support in the record. Thus, the Court will deny the motion for judgment n.o.v. On examination by Attorney Pribish, defendant Kletter testified that Freedman took responsibility for the "legal coordination" of the state court lawsuit against plaintiffs. Trial Transcript at 496. Kletter further testified that all the shareholders of CWS, including Kletter and Freedman, agreed to initiate the lawsuit in state court. *Id.* In addition, the testimony clearly established that Kletter showed the complaint to various persons who had business relationships with Bisesti. The jury

---

**20.** Defendant Freedman properly preserved his right to move for judgment notwithstanding the verdict by moving at trial for a directed verdict. Fed.R.Civ.P. 50(b) ("[A] party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict....").

could have found that Kletter indicated to CWS customers and R & E customers alike that Bisesti was "on the take" and a "crook[ ]." Trial Transcript at 735 (testimony of Charles Warful); Trial Transcript at 963–68 (testimony of Richard V. Bisesti); Trial Transcript at 1227–28 (deposition of Michael Babb). Kletter himself testified that he intended to inform customers of the pending lawsuit. Trial Transcript at 566 (testimony of Kletter).

A jury could infer from this testimony that Freedman helped to coordinate the baseless state court lawsuit against Bisesti and R & E; that he was instrumental in furthering a scheme to defame Bisesti by instigating the lawsuit; that he could reasonably foresee or did in fact intend that false and harmful words regarding plaintiffs be communicated to the waste services business community via CWS agents and shareholders. In short, because Freedman could reasonably have been understood by the jury to have played a key role in a common plan to slander plaintiff, defendant's motion for judgment n.o.v. is denied.

## E. Defendant Industrial Services' Motion for Judgment in the Alternative

■ Defendant Industrial Services has filed a motion asking the Court to order judgment in the alternative as to Counts I and II. Relying on a case from the Second Circuit, *Kelco Disposal, Inc. v. Browning–Ferris Industries of Vermont, Inc.*, 845 F.2d 404 (2d Cir.1988), Industrial Services contends that R & E must elect damages under either Count I or Count II, but may not collect damages under both. Industrial Service's contention rests on the notion that the jury verdict would allow R & E to collect under two legal theories for the same injury.

Plaintiff R & E opposes this motion. According to R & E, the jury awards under Counts I and II compensated R & E for separate and independent injuries. Plaintiff R & E contends that Count I, the antitrust claim, addressed defendants' attempts to force R & E from the equipment market. Count II, the interference with contractual relations claim, compensated R & E for the loss of profits from service contracts resulting from defendants' wrongful activity.

In *Kelco, supra,* the plaintiff's complaint "alleged that defendants had attempted to monopolize the Burlington ... market, in violation of section 2 of the Sherman Act ..., and that defendants' conduct constituted intererence [sic] with contractual relations under Vermont tort law." *Id.* at 406. The defendants in *Kelco* in fact conceded that if the plaintiff prevailed on the antitrust claim, "then the defendants are also liable on the state tort claim." *Id.* at 409. Indeed, the jury returned verdicts in plaintiff's favor on both the tort and antitrust claims, and awarded identical compensation under each theory.[21] In short, it was undisputed that if the defendant's conduct was found to violate the antitrust laws, then that same conduct, taken in its entirety, would also establish a violation of state law. Because the same conduct could be redressed under at least two theories of law, the district court ordered plaintiff "to elect between the alternative federal and state remedies." *Id.* at 407. The Second Circuit affirmed.

In the instant case, the jury did not award identical damages for Count I and for Count II. Rather, on Count I, the jury found Industrial Services liable for a sum equal to R & E's claimed loss of profit due to lost equipment sales. On Count II, the jury awarded to R & E the exact amount that R & E claimed it lost due to defendants' interference with R & E's contractual relations. In light of the precise sums awarded by the jury, it is reasonable to conclude that the jury believed the plaintiffs' evidence as to cause and amount of

---

**21.** The jury awarded plaintiff $51,146.00 on the state claim, and the same amount on the antitrust claim. The jury also awarded six million dollars in punitive damages against defendants on the state claim pursuant to Vermont common law. *Kelco,* 845 F.2d at 406–7, 409–10.

The court later amended the antitrust judgment to account for treble damages, attorney's fees and costs under 15 U.S.C. § 15. *Id.* at 407. Not surprisingly, plaintiffs chose the larger state law award.

loss, and awarded damages accordingly. There is no evidence of duplicative recovery. To the contrary, the jury verdicts remedy separate legal injuries, and the principle against double recovery is not violated.

### F. Plaintiffs' Motion for Order Requiring Defendants to Pay for Trial Transcript

By Order dated December 15, 1989, the Court ordered the parties to produce for the Court the trial transcript, with the plaintiffs and defendants each paying one half of the cost. Plaintiffs now contend that the Court should place the cost burden entirely on the defendants. Plaintiffs have thus moved for a supplemental order requiring defendants to bear all costs with regard to the trial transcript.

Title 28 U.S.C. § 1920 provides in relevant part as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> . . . .
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> . . . .

The decision to tax costs pursuant to section 1920 or otherwise is within the discretion of the court. *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 232, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964). Case law indicates that courts generally tax costs of transcripts of depositions, daily proceedings, or other proceedings when "necessarily obtained for use in the case." *See, e.g., Studiengesellschaft Kohle v. Eastman Kodak*, 713 F.2d 128, 133 (5th Cir.1983); *Syracuse Broadcasting Corp. v. Newhouse*, 32 F.R.D. 29, 30–31 (N.D.N.Y. 1963). A party is not entitled, however, to recover all costs arising out of the lawsuit. Rather, "the prevailing party is permitted in the court's discretion to recover certain enumerated costs necessary to preparation and presentation of his case...." *In re Puerto Rico Electric Power Authority*, 687 F.2d 501, 507 (1st Cir.1982) (*citing* Fed. R.Civ.P. 54(d), 28 U.S.C. § 1920).

Under the present circumstances, the Court, notwithstanding section 1920, refrains from ordering defendants to bear the entire cost. In this case, plaintiffs did not need the transcript for "preparation and presentation" of the case. *Id.* The transcript was not necessary to avoid confusion or delay at trial. Plaintiffs did not need the transcripts for cross-examination or any other trial purpose. Rather, the Court, and not the parties, needed the transcript in order to resolve post-trial motions filed by both parties. The equities require, then, that the parties split the costs of the transcript in this situation. The Court declines plaintiffs' invitation to place the transcript costs on defendants. Plaintiffs' motion is therefore denied.

## III. CONCLUSION

In sum, the Court today makes the following rulings:

(1) The Court GRANTS plaintiff R & E's motion for treble damages under the Clayton Act, 15 U.S.C. § 15. Therefore, defendant Industrial Services must pay to plaintiff R & E the amount of $129,150.00, a sum triple the actual damages sustained as a result of antitrust violations.

(2) The Court GRANTS plaintiff R & E's motion for multiple damages under chapter 93A. Defendants Kletter and Freedman are therefore ordered to pay to R & E the amount of $40,000, a sum twice the actual damages sustained as a result of willful, unfair and deceptive practices, payable in equal parts by both Freedman and Kletter.

(3) The Court GRANTS plaintiff's motion for an award of reasonable attorney's fees and costs, pursuant to the fee provisions of chapter 93A and the Clayton Act. Defendants Industrial Services, Kletter and Freedman are therefore ordered to pay to plaintiff R & E the amount of $80,260.50 for total attorney's fees reasonably expended, and the amount of $7,712.97 for costs incurred in the case.

(4) The Court DENIES defendant Freedman's motion for judgment notwithstanding the verdict.

(5) The Court DENIES defendant Industrial Services' motion for the award of judgment in the alternative.

(6) The Court DENIES plaintiffs Bisesti and R & E's motion to compel defendants to bear the entire cost of the trial transcript.

The Clerk is hereby ordered to enter judgment in accordance with this Memorandum and Order and the verdict returned by the jury on March 30, 1989.

It is So Ordered.