32 Mass. App. Ct. 713          713

Boy Scouts of America, Cape Cod & Islands Council, Inc. *v.* Yarmouth.

BOY SCOUTS OF AMERICA, CAPE COD & ISLANDS
COUNCIL, INC. *vs.* TOWN OF YARMOUTH.

No. 90-P-1357.

Barnstable. January 13, 1992. - June 24, 1992.

Present: KASS, FINE, & LAURENCE, JJ.

*Eminent Domain*, Damages. *Damages*, Eminent domain. *Evidence*, Value.
*Value. Way*, Public: establishment, subdivision control. *Subdivision
Control*, Frontage on public way.

In a proceeding to assess damages on account of a town's taking of unde-
veloped land that abutted an unconstructed public way on other land
which the county commissioners had previously taken in fee from the
same owner for highway purposes, it was error for the judge to grant
partial summary judgment and instruct the jury to the effect that, at
the time of the taking, the landowner was entitled to construct the way
at its own expense after public authorities failed or refused to do so.
[715-719]

In a proceeding to assess damages on account of a town's taking of unde-
veloped land, it was within the judge's discretion to allow expert testi-
mony as to the likelihood that, at the time of the taking, the town's
planning board would have waived its limitation on the length of dead-
end streets, so as to permit development of the property. [719]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 28, 1989.

A motion for partial summary judgment was heard by
*Elizabeth J. Dolan*, J., and the case was tried before her.

*Joseph A. Lena* for the defendant.

*Michael Daniel Ford* for the plaintiff.

LAURENCE, J. The town of Yarmouth (town) appeals from
a judgment on a jury verdict in favor of the Boy Scouts of
America, Cape Cod & Islands Council, Inc. (Boy Scouts),
assessing damages of $491,000 against the town on account
of an August, 1986, taking by the town of undeveloped land
owned by the Boy Scouts in Yarmouth. The land taken abut-

ted Old Town House Road, a public way that had been laid out by the Barnstable County commissioners after a taking for highway purposes in January, 1974, but never constructed.

The town makes two principal arguments on appeal: first, that the trial judge erred in a pretrial allowance of the Boy Scouts' motion for partial summary judgment, in which the judge held (and thereafter so instructed the jury) that the Boy Scouts had the legal right to construct, at their own expense, the unconstructed public way after the town had failed to do so; and second, that the judge erred in admitting the testimony of the Boy Scouts' expert, who opined that the town planning board would have waived its restriction on the length of dead-end streets for the constructed way so as to permit the Boy Scouts to subdivide and develop their property. We hold that the judge erred in granting the partial summary judgment, because as matter of law the Boy Scouts had no right to build the unconstructed way.

Prior to 1974, the Boy Scouts owned five parcels of undeveloped land in the western part of the town. These parcels lay in an area zoned for industrial use but had limited access to public roads. On January 11, 1974, the county commissioners adopted an order of taking that laid out a public highway known as Old Town House Road, which cut across the Boy Scouts' land and on paper connected the area to existing public roads. The order stated that the fee in the land within the highway layout was being taken and provided for a pro tanto payment of $1.00 for each of the Boy Scouts' parcels. The Boy Scouts do not, and never did, contest the adequacy of that 1974 damage award. Compare *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.*, 335 Mass. 189, 190 n.2 (1956).

The order of taking also instructed the town to construct the road at its own expense by January 13, 1976, but the town failed to do so, and the way remained unconstructed at all times relevant to this action. It does not appear that the county commissioners were ever requested, or ever took it upon themselves, to cure the town's default of performance.

See G. L. c. 82, § 14. On August 8, 1986, the town, for a nominal payment, took the fee to the Boy Scouts' five parcels, all of which abutted the proposed road, apparently to build a golf course. Some time thereafter the town petitioned the county commissioners to abandon the unconstructed Old Town House Road, which the commissioners voted to do on December 10, 1986.

In February, 1989, the Boy Scouts challenged the adequacy of the town's damage award in the Superior Court. The Boy Scouts' theory was that the assessment of damages should have reflected the value the taken land would have had were Old Town House Road constructed so that they could fully develop their property. In a motion for partial summary judgment, the Boy Scouts argued that at the time of the taking they had the legal right to construct Old Town House Road after the town had failed or refused to do so. The judge allowed the motion, relying on *Perry* v. *Planning Bd. of Nantucket*, 15 Mass. App. Ct. 144 (1983), and instructed the jury at the commencement of trial that, at the time of taking, the Boy Scouts had such a legal right, provided that the work was done in accordance with the then existing town standards for road construction.

The *Perry* decision does not, however, support the judge's conclusion. We know of no Massachusetts authority (nor have we been directed to any) permitting a private abutter at its own expense to build a laid out but unconstructed highway held in fee by a public authority after a failure or refusal by the authority to construct the way. No such issue was raised or decided in *Perry*. That case involved the question whether a town planning board could deny an exemption from subdivision control requirements under G. L. c. 41, § 81L, twelfth par., cl. (*a*), for lots that fronted on unconstructed ways which the owner considered to be "public ways" because they had been laid out by the county commissioners when they took an easement for building the road. The court held that unconstructed paper ways did not qualify for the "public way" exemption in § 81L; only ways that in

fact existed on the ground satisfied the statute. *Perry*, 15 Mass. App. Ct. at 149-151.

In the course of responding to the landowner's expressed concern that, given the court's ruling, he might be left without the realistic prospect of access to the proposed lots sufficient to permit development, the court in *Perry* went on to observe that:

> "Perry also may have the right to construct access roads over the unused highway easements or unimproved existing ways *in which he holds the underlying fee* if there is a refusal either to construct the ways or abandon the easements. 'By the location of a highway an easement of passage is secured for the public with all incidental privileges thereby implied. The fee of the land commonly remains in the owner, who may make any use of it not inconsistent with the paramount right of the public [to use the easement as a highway].' " (Emphasis added.) *Perry*, 15 Mass. App. Ct. at 158, quoting from *Commonwealth* v. *Surridge*, 265 Mass. 425, 427 (1929).

The judge here recognized that in *Perry* the county commissioners held only an easement in the land taken for the highway, while in this case they had taken the fee. She ruled that to be an insufficient distinction, on the strength of what she regarded as the court's essential rationale in *Perry*, 15 Mass. App. Ct. at 159 n.13:

> "Allowing Perry to proceed with such construction would eliminate any potential for abuse latent in c. 82. The statute appears to provide no procedure by which someone in Perry's position can compel a governmental entity either to build or discontinue [such] a way . . . [and] imposes no specific time limits on any government agency to proceed with construction. . . . In a theoretical sense, unless private construction of *unbuilt or underbuilt highway easements* is permitted, c. 82 could be used perversely to impede otherwise lawful development

through *the taking of easements for highways* which are never constructed or abandoned" (emphasis added).

The distinction between a highway taking by easement and a taking by fee is, however, critical. The *Perry* court's recognition of the right of the abutting owner who continues to own the underlying fee to construct the road was, as the court expressly noted, "consistent with the long standing rule in cases of easement by grant, that 'an owner may use the land for all purposes which are not inconsistent with the easement . . . or which do not materially interfere with its use' " (citations omitted). *Id.* at 158. Allowing the feeholder there to use the proposed highway easement as a highway, the very purpose for which the easement was taken, was fully "compatible with the existence of the present public highway easements . . . ." *Id.* at 159.

No such right has ever been deemed to be enjoyed by abutters where a public authority has taken the fee rather than an easement for the highway. An eminent domain taking in fee extinguishes all interests in the property and vests the public authority[1] with complete title. See *Silberman* v. *United States*, 131 F.2d 715, 717 (1st Cir. 1942). Recognizing a right in abutters to construct improvements for their own benefit on land owned by another without that other's consent[2] would, in the absence of an authorizing statute, be inconsistent with the concept of full possessory ownership en-

---

[1] No issue has been raised as to the county commissioners' authority to take land for highway purposes in fee rather than as an easement, see G. L. c. 79, §§ 1, 3; c. 82, § 7. The discretionary decision of a body expressly authorized to take a fee to acquire the fee rather than an easement is legislative in nature and, if in strict compliance with the statutory terms and for a valid public purpose, cannot be questioned in a court. *Boston* v. *Talbot*, 206 Mass. 82, 88-90 (1910).

[2] The Boy Scouts' brief asserts that abutters possessed such a right "at common law" but cites no authority for that contention, nor does it appear to have been made to the trial judge. We need not, therefore, consider the proposition, which we deem questionable in any event. See Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975); *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958); *Albert* v. *Municipal Ct. of Boston*, 388 Mass. 491, 493-494 (1983); *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 376 n.2 (1985).

718                                      32 Mass. App. Ct. 713

Boy Scouts of America, Cape Cod & Islands Council, Inc. *v.* Yarmouth.

joyed by a holder of the fee title. "If a possessory interest in real property has any meaning at all it must include the general right to exclude others. Nichols, Eminent Domain (rev. 3d ed.) § 5.1[1] (1970)." *Opinion of the Justices*, 365 Mass. 681, 689 (1974).

Nor is recognition of the asserted right of a private abutter to build at its own expense a laid out but unconstructed road on property owned in fee by the county needed, in the circumstances of this case, to avoid the "potential for abuse latent in c. 82" mentioned in the *Perry* case and relied upon by the Boy Scouts and the trial judge. Whatever validity that policy point may have had in *Perry*, it is inapposite here, since, as of the date of the town's taking, Old Town House Road as laid out in the January, 1974, order of taking was still a designated public highway. Such a public way, once duly laid out, cannot be lost by mere nonuser or even abandonment and continues to be a highway until legally discontinued. *Carmel* v. *Baillargeon*, 21 Mass. App. Ct. 426, 428 (1986).[3]

The Boy Scouts were, and remain, entitled to damages measured by the full fair market value of the property taken as of the date of the taking, see G. L. c. 79, § 12; *Correia* v. *New Bedford Redev. Authy.*, 375 Mass. 360, 366 (1978), in light of the highest and best use to which the property could be put at that time, including uses reasonably likely in light of the access and development potential provided by the existing laid out public way and of the opportunity to seek its discretionary construction by the county commissioners if the town persisted in its failure to construct the road. See G. L. c. 82, §§ 8, 14, 15; *Skyline Homes, Inc.* v. *Commonwealth*,

---

[3]We need not reach the question of the parties' respective rights had the county commissioners voted to abandon Old Town House Road prior to the town's taking, but merely note that such a sequence of events would not improve the Boy Scouts' position in light of our analysis. Any "abuse" in such a situation would consist merely in the elimination of a potential benefit that had accrued to the Boy Scouts' abutting undeveloped properties in connection with the 1974 highway layout taking, which would appear to involve minimal (if any) damages, at least in the absence of proof of reasonable detrimental reliance.

362 Mass. 684, 685-686 (1972); *Salem Country Club, Inc.* v. *Peabody Redev. Authy.*, 21 Mass. App. Ct. 433, 436 (1986).[4]

The issue of the propriety of the Boy Scouts' expert's opinion testimony as to the likelihood that the planning board would have waived the prohibition on dead-end streets longer than 800 feet[5] is likely to reemerge at a new trial. We therefore add that we see no error or abuse of discretion in the judge's having allowed such testimony, since it was based upon the expert's personal experience with the planning board on applications involving that very issue. The judge necessarily has a wide discretion with respect to such evidence of possible uses. *Skyline Homes, Inc.* v. *Commonwealth*, 362 Mass. at 687. Here she allowed the very sort of "evidence tending to show . . . that, judging from past experience in similar situations," a waiver would probably be granted, which has been deemed proper. *Ibid.* There was nothing unduly speculative or remote about it, and the town had full opportunity to rebut it by evidence of the sort that it now contends would have been more probative.

The judgments appealed from are vacated and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[4] We acknowledge the practical difficulty posed to the Boy Scouts by the county commissioners' formal abandonment of the way four months after the taking, but that fact is not necessarily determinative of the likelihood, probability, or reasonable prospect of effecting a construction of the road just prior to the taking, which is a matter capable of proof upon expert testimony and appropriate jury instructions.

[5] At the time of the taking, the town had in effect a subdivision regulation that prohibited dead-end streets longer than 800 feet unless in the opinion of the planning board greater length was necessitated by topography or other local considerations. The hypothetical subdivision that the Boy Scouts' expert testified would constitute the highest and best use of the property taken required a dead-end road over 4,400 feet long, which in turn required a waiver of the length restriction.