RITA DANUSIS & another[1] *vs.* JOHN LONGO & another.[2]

No. 97-P-2140.

Essex. May 13, 1999. - November 23, 1999.

Present: PERRETTA, DREBEN, & SPINA, JJ.[3]

*Manufactured Housing Community. License. Municipal Corporations,* Board of health. *Administrative Law,* Judicial review. *Statute,* Construction. *Practice, Civil,* Complaint, Amendment. *Words,* "Lot," "Tract of land."

Owners of manufactured homes situated on certain commonly owned subdivision lots timely, viz., reasonably promptly, brought an action challenging an unwritten decision of a town board of health to the effect that the owner of the land was not required to seek a license pursuant to G. L. c. 140, §§ 32A-32S, to operate or maintain a manufactured housing community, where the thirty-day limitations period of G. L. c. 30A, § 14(1), was not applicable; where the Attorney General and selectmen of the town had issued directives in contradiction of the board's action; and where the twelve-month delay in filing the action caused no prejudice to any party. [255-256, 259-261]

A parcel of land subdivided into lots on which were placed seventeen manufactured homes, each on one lot, constituted a "lot or tract of land" within the meaning of G. L. c. 140, § 32F, and as a consequence the common owner of the property was subject to the licensing provisions of the Manufactured Housing Act, G. L. c. 140, §§ 32A-32S. [261-263]

A Superior Court judge erred in refusing to allow plaintiffs, owners of manufactured homes who brought an action against the owner of the property on which their homes were situated for his violation of the Manufactured Housing Act, G. L. c. 140, §§ 32A-32S, to amend their complaint to add a claim for violation of G. L. c. 93A. [263-264]

CIVIL ACTION commenced in the Superior Court Department on March 13, 1997.

Motions to amend the complaint and for summary judgment were heard by *Charles M. Grabau,* J.

---

[1]Kendall Lane Tenants Association.

[2]Salisbury Board of Health.

[3]This case was argued before Justices Perretta, Dreben, and Spina. Following Justice Spina's appointment to the Supreme Judicial Court, Justice Kass was added to the panel and participated in the decision.

*Alan S. Fanger* for the plaintiffs.

*Kurt B. Fliegauf* for Board of Health of Salisbury.

*John D. Hughes* for John Longo.

*Scott Harshbarger*, Attorney General, & *Donna L. Palermino*, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

PERRETTA, J. This is an appeal by Rita Danusis and the Kendall Lane Tenants Association (collectively referred to as tenants) from a summary judgment granted by a Superior Court judge in favor of John Longo and the Salisbury board of health (board). By their complaint, the tenants sought a determination that they were entitled to the protections afforded by the long-standing Manufactured Housing Act (Act), G. L. c. 140, §§ 32A-32S.[4] The Superior Court judge determined that the complaint was not timely filed. He also denied the tenants' then-pending motion to amend the complaint by adding a count under G. L. c. 93A. Because we conclude that the tenants' complaint was timely filed, that they are entitled to the protections provided by the Act, and that their motion to amend the complaint should have been allowed, we reverse the judgment.

1. *The Manufactured Housing Act.* A brief overview of the statutes involved in this case would be helpful to an understanding of the Act. Sections 32A through 32S of the Act provide comprehensive and substantial rights to owners of manufactured homes who place such structures upon land rented by them.[5] These rights and protections have been enacted because "[b]oth the Legislature and the courts of the Commonwealth have recognized that manufactured housing communities provide a

---

[4]For a synopsis of the Act's history, see *Quinn* v. *Rent Control Bd. of Peabody*, 45 Mass. App. Ct. 357, 359 n.4 (1998).

[5]As defined in § 32Q of the Act, as amended by St. 1991, c. 481, § 19, a manufactured home is a "structure, built in conformance to the National Manufactured Home Construction and Safety Standards which is transportable in one or more sections, which in the traveling mode, is eight body feet or more in width or forty body feet or more in length, or, when erected on site, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling unit with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained therein." As put in *Commonwealth* v. *DeCotis*, 366 Mass. 234, 238 (1974), "[o]nce a mobile home has lost a substantial portion of its mobility by its placement on a foundation with utility connections and associated landscaping, the expense of moving the home for purposes of sale are substantial in relation to its market value."

viable, affordable housing option to many elderly persons and families of low and moderate income, who are often lacking in resources and deserving of legal protection." *Greenfield Country Estates Tenants Assn.* v. *Deep*, 423 Mass. 81, 83 (1996). See *Commonwealth* v. *DeCotis*, 366 Mass. 234, 243 & n.7 (1974); *Quinn* v. *Rent Control Bd. of Peabody*, 45 Mass. App. Ct. 357, 359-360 & n.4 (1998); St. 1986, c. 317, an emergency proclamation amending § 32L and adding § 32R to the Act.[6] Whether the rights and protections afforded by the Act[7] are available to an owner of a manufactured home depends upon whether the home is situated in a "manufactured housing community" as that term is defined in § 32F, as amended by St. 1991, c. 481, § 19, that is, "[a]ny lot or tract of land upon which three or more manufactured homes occupied for dwelling purposes are located . . . ." Because the tenants reside in manufactured homes situated on land owned by Longo, the primary issue on appeal is whether he is using the land to operate a manufactured housing community.

2. *The facts.* It is against the backdrop of these pertinent provisions of the Act that we recite the undisputed facts as they appear in the materials submitted by the parties on their motions to dismiss or for summary judgment.[8] In 1973, Longo, a real estate developer, purchased approximately thirty-three acres of land in Salisbury. Thereafter, he submitted a subdivision plan of the parcel to the local planning board. Pursuant to his plan, which was approved in October, 1976, the parcel was divided

---

[6]In its declaration of emergency, the Legislature stated that a "serious public emergency exists within the commonwealth, with respect to the housing of a substantial number of citizens of the commonwealth who are mobile home owners and residents."

[7]The rights and protections extended by the Act include, but are not limited to: notice and procedural requirements which must be met prior to the initiation of an action for summary process (§ 32J); various notice requirements and protections due tenants upon the discontinuance of a manufactured housing community (§ 32J and § 32L[7A]); safeguards against reprisal or threats thereof for reports of statutory and code violations (§ 32N); disclosure requirements concerning the terms and conditions of occupancy (§ 32P); the right of first refusal by a homeowners' association to purchase the manufactured housing community in which its members reside (§ 32R); and the availability of relief pursuant to G. L. c. 93A (§ 32L[7]).

[8]The Superior Court judge treated the motions as seeking summary judgment.

into forty-nine single-family house lots.[9] Access to these lots, as can be seen from the appended sketch, is gained either from Lafayette Road (U.S. Route 1) or Kendall Lane.[10]

Sometime in 1978, Longo began to allow the owners of manufactured homes to place their structures upon certain of the subdivided lots owned by him. Next, in January of 1982, Longo conveyed twenty-four of the forty-nine subdivided lots owned by him to himself as trustee of a realty trust. Longo rents, on a monthly basis, seventeen of those twenty-four lots to owners of manufactured homes, one home per subdivision lot.[11] Each manufactured home rests upon a foundation and has appropriate utilities as would conventional stick-built housing. Each of the seventeen lots has its own septic system, provided by Longo, who also pays the real estate taxes on each of the separately assessed lots. The tenants pay for their own utilities and water.

As alleged by the tenants in their complaint and affidavits, they are retired, disabled, of modest means, and are living on fixed incomes. They claim that, throughout the years, Longo has failed to maintain the property in question, has increased rents, has charged excessive rents, has terminated various tenancies, and has threatened to terminate tenancies unless the rental increases are paid. The tenants also allege that when Longo discovered that they intended to claim coverage under the Act, he attempted to persuade certain of them to abandon their affili-

---

[9]For the convenience of the reader, a sketch of the approved subdivision of the thirty-three acre parcel appears in an appendix to this opinion.

[10]In his affidavit in support of his motion for summary judgment, Longo alleges that Kendall Lane is a public way that was "accepted and approved" by Salisbury at some unspecified date and that Salisbury then became "responsible for all maintenance of" that way. However, there is nothing in the materials before us to indicate that in accepting Kendall Lane, Salisbury also acquired title to the fee in the underlying land. See *McHugh* v. *Boston*, 173 Mass. 408, 409 (1899) (by laying out public way, town does not become owner of fee or easement; rather, citizens acquire a nonexclusive easement); *Commonwealth* v. *Surridge*, 265 Mass. 425, 427 (1929) (laying out of public way secures an easement of passage in the public with fee interest remaining in the owner). Compare *Boy Scouts of America, Cape Cod & Islands Council, Inc.* v. *Yarmouth*, 32 Mass. App. Ct. 713, 714, 717 (1992) (where county takes fee in land by eminent domain to lay out public way, landowner's ownership interest in underlying property is extinguished and county is vested with complete title).

[11]As shown on the sketch appended to the opinion, the seventeen lots in issue are numbered 2, 3, 4, 5, 6, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 37.

ation with the association and represented that their rents would increase were it determined that the seventeen lots fell within the scope of the Act. The tenants, nonetheless, commencing in 1991 and continuing up to the filing of this action in 1997, complained to the board of selectmen and the defendant board of health that they were being denied their rights under the Act and Salisbury's rent control provisions.

Salisbury officials took no action in response to the tenants' concerns and complaints for about four years. In the meantime, Longo has never applied for a license to operate or maintain a manufactured housing community under § 32F of the Act. In June, 1995, the board of selectmen determined, apparently on the basis of advisory opinions from the Attorney General of the Commonwealth and town counsel, that Longo's property fell within the scope of the Act and ordered the board of health to proceed with the licensing process. Notwithstanding the selectmen's determination, the board of health took the view that the seventeen lots did not constitute a manufactured housing community within the meaning of § 32F and refused to proceed further.

It appears that the board of health reached its conclusion, that Longo was not required to seek a license, after a vote taken at a meeting held on March 19, 1996. That vote was unaccompanied by a written decision or any other memorialized explanation. As further alleged, the tenants did not receive any notice of the board's decision or of their right of appeal from the board's determination.[12] They brought this action about twelve months later, on February 24, 1997.[13]

3. *The tenants' complaint.* There is a threshold issue to be

[12]Neither the board of health nor Longo disputes this allegation, and there is nothing in the materials before us to show that the board's vote was taken and its decision reached after proper notice of its meeting and an evidentiary hearing.

[13]The tenants allege in their complaint that Longo operates a manufactured housing community without a license and has increased rents and terminated tenancies, all in violation of the Act. They also claim that the board of health has refused to enforce the Act and that they thereby have been deprived of the rights afforded by the Act. Based upon these allegations, they sought a declaration that the seventeen lots in dispute were subject to the Act and the appointment of a master to oversee the Act's licensing mandate and to make a determination of the amount of damages to be awarded them. By their motion to amend their complaint, the tenants sought to add a count under G. L. c. 93A. See G. L. c. 140, § 32L (providing that a failure to comply with any

resolved before we consider the substance of the tenants' complaint, that is, whether they timely brought their action.

a. *Timeliness of the complaint.* In his memorandum of decision, the Superior Court judge noted that "[a]lthough not styled in the form of a c. 30A appeal, the complaint . . . appears to challenge the March [19,] 1996 refusal by the Board of Health to require that Longo obtain a license under G. L. c. 140, § 32." Relying upon the limitations period set out in G. L. c. 30A, § 14(1), the Superior Court judge concluded that the tenants' complaint was untimely because it had not been brought within thirty days of the decision of the board of health.[14] Finding and concluding that there were no special circumstances warranting the tenants relief from that statutory time requirement, the Superior Court judge dismissed the complaint and entered judgment for the defendants.

There is no dispute that the tenants did not file their complaint within thirty days of the vote of the board of health. It does not follow, however, that the complaint was untimely filed. Three provisions of the Act are relevant to the question of the timeliness of the filing. We begin with § 32B, which reads: "The *board of health of any city or town*, in each instance after a hearing, reasonable notice of which shall have been published once in a newspaper published in such city or town, may grant, and may suspend or revoke, licenses for . . . manufactured housing communities located within such city or town" (emphasis supplied). If Longo is using his seventeen lots for a manufactured housing community, he is required under § 32F, as earlier noted, to obtain a license under § 32B to do so. Finally, and controlling on the question of timeliness is § 32K, which states that "[a]ny person aggrieved by any act, rule, order or decision of the licensing board may appeal to the superior court."[15] As established by these provisions of the Act, the board of health is the licensing board.

provision of the Act shall constitute an unfair and deceptive act or practice under c. 93A, § 2).

[14]Section 14(1) provides, in pertinent part: "Proceedings for judicial review of an agency decision shall be instituted in the superior court . . . . The action shall . . . be commenced in the court within thirty days after receipt of notice of the final decision of the agency."

[15]The board of health argues that it had no authority to compel Longo to apply for a license and, therefore, the tenants are not "aggrieved" by its decision. The argument is disingenuous. It is not within the discretion of an owner or operator of a manufactured housing community to decide whether to apply

A local board, such as a board of health, is generally not a "state agency" within the scope of G. L. c. 30A, § 1(2). See *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. 531, 538 (1988); *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston*, 405 Mass. 79, 85 n.8 (1989); *Fratus* v. *Selectmen of Yarmouth*, 6 Mass. App. Ct. 605, 608 (1978). Nor did the board of health proceed in accordance with the norms of an administrative agency: notice, hearing and so forth. As to the Act, there is nothing within § 32K or any other provision that subjects any appeal under that section to the thirty-day appeal period set out in c. 30A, § 14(1).

Even were we to conclude that the tenants' complaint was subject to c. 30A, we also would conclude that they were entitled to circumvent the normal course of administrative review because their complaint presents special circumstances which justify an action seeking a declaration of their rights. Those special circumstances are as follows.

As we earlier stated, it was not until June, 1995, after receiving opinions from the Attorney General and town counsel, that the selectmen directed the board of health to proceed with the licensing process. Neither of the defendants (see note 12, *supra*) disputes the tenants' assertion that the board of health failed to give notice of any hearing or vote and never issued a written decision regarding its meeting and vote of March 19, 1996, all as required by c. 30A, §§ 14(1) and 32B, of the Act. Moreover, the selectmen and the Attorney General have expressed a view on a matter of grave public concern (see *Greenfield Country Estates Tenants Assn.* v. *Deep*, 423 Mass. at 83; *Commonwealth* v. *DeCotis*, 366 Mass. at 238; *Quinn* v. *Rent Control Bd. of Peabody*, 45 Mass. App. Ct. at 359 n.4) which is in direct conflict with that of the licensing authority, the board of health. See *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 353 (1992) (recognizing special circumstances when "[t]wo distinct public bodies claiming a direct interest in the subject matter have issued conflicting orders").

for a license pursuant to § 32B. See G. L. c. 140, § 32A ("No person shall conduct, control, manage or operate, directly or indirectly, any . . . manufactured housing community unless he is the holder of a license granted under [§ 32B]"). Moreover, § 32E and 940 Code Mass. Regs. § 10.11(3), the enactment and promulgation of which is authorized under § 32S, allow for the assessment of a fine for each day that a person conducts, controls, manages or operates such a community without a license.

Although the tenants did not bring this action until twelve months after the vote of the board of health, we deem the delay modest, especially in light of their never having received notice of the decision. Cf. *Williams* v. *Inspector of Bldgs. of Belmont*, 341 Mass. 188, 190 (1960); *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 520 (1965). Any delay by the tenants in seeking judicial relief has not made it difficult for the selectmen or the board of health to take any action deemed necessary to remedy the ongoing situation. Compare *Yetman* v. *Cambridge*, 7 Mass. App. Ct. 700, 707-709 (1979) (laches applied to complaint seeking interpretation of ordinance made by city seven years earlier and which provided basis for two subsequent collective bargaining agreements). Nor does any delay appear to have disadvantaged Longo.

In view of these circumstances, we conclude that the tenants' complaint was filed in a reasonably prompt manner and that their rights, if any, under the Act should be determined on the basis of the undisputed facts put before the Superior Court judge. Contrast *Middleborough* v. *Middleborough Gas & Elec. Dept.*, 47 Mass. App. Ct. 655, 658 (1999).

b. *Substance of the complaint.* As provided in § 32A, "[n]o person shall conduct, control, manage or operate, directly or indirectly, any . . . manufactured housing community unless he is the holder of a license granted under [§ 32B]." The term "manufactured housing community" is defined in the first paragraph of § 32F, which reads:

> "Any *lot or tract of land* upon which three or more manufactured homes occupied for dwelling purposes are located, including any buildings, structures, fixtures and equipment used in connection with manufactured homes shall be defined as a manufactured housing community. *No lot or tract of land* may be used for a manufactured housing community unless the owner or occupant thereof is the holder of a license granted under section thirty-two B" (emphasis added).

There is nothing in the Act that defines either the word "lot" or the term "tract of land." Longo argues that we should give the word "lot" the same meaning as that set out in the Subdivision Control Law, G. L. c. 41, §§ 81K through 81GG. As defined in c. 41, § 81L, a "lot" is an "area of land in one ownership, with definite boundaries, used, or available for use,

as the site of one or more buildings." As for the words "tract of land," Longo states that the phrase impliedly means a parcel of land *before* it is subdivided into lots. Because his tract of land has been subdivided into "lots" within the meaning of § 81L and because there is only one manufactured home on each of the subdivided lots, Longo maintains that he does not operate a "manufactured housing community" within the scope of § 32F, that is, upon "[a]ny lot or tract of land." Although Longo's argument is as clever as his subdivision plan, it fails.

Zoning and subdivision control law definitions and concepts are seldom helpful in interpreting terms and provisions of the Manufactured Housing Act for the oft-stated reason that the former pertain to land-use issues whereas the latter concern licensing requirements based upon an expressed legislative intent to protect elderly and disabled consumers who live on low incomes and in manufactured houses. See *Granby* v. *Landry*, 341 Mass. 443, 446 (1960); *Manchester* v. *Phillips*, 343 Mass. 591, 593 n.3 (1962); *Selectmen of Wrentham* v. *Monson*, 355 Mass. 715, 717 (1969); *Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 825-826 (1973); *Gamache* v. *Acushnet*, 14 Mass. App. Ct. 215, 220 & n.9 (1982). Consequently, we do not accept the premise of Longo's argument, that is, that the express and implied meanings given the terms "lot" and "tract of land" for zoning and subdivision purposes are also embodied in § 32F of the Act.

We put aside zoning and subdivision concerns and begin our analysis with the general rule that a "statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. 416, 420 (1986); *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 286 (1996).

As commonly understood, a "tract" of land is simply an "expanse of land." American Heritage Dictionary 1896 (3d ed. 1992). See Black's Law Dictionary 1492 (6th ed. 1990) (tract of land is a "lot, piece or parcel of land, of greater or less size, the term not importing, in itself, any precise dimension"; a term

"synonymous with parcel of land and does not have reference to size but to contiguous quantity of land"); Cartwright, Glossary of Real Estate Law 942 (1972) (tract defined as "[a] parcel of land. An area of real estate, frequently subdivided into smaller parcels"). Both the ordinary meaning of the term and the previously discussed purposes of the Act lead us to conclude that, as used in § 32F, the phrase "[a]ny lot or tract of land" is sufficiently broad to comprehend a parcel of land subdivided into lots pursuant to a plan devised by, or for the benefit of, the owner who retains title to, or control of, the lots upon which manufactured homes are placed.[16]

That Longo conveyed title to some of the subdivided lots to himself as trustee of a real estate trust is of no consequence to our conclusion.[17] Notwithstanding that conveyance, according to his own affidavit, Longo controls and manages the seventeen leased lots. He is doing so in violation of G. L. c. 140, § 32A ("[n]o person shall conduct, control, manage or operate, directly or indirectly, any . . . manufactured housing community unless he is the holder of a license granted under [§ 32B]").

4. *The motion to amend.* Less than three months after filing their complaint, the tenants sought to amend it by adding a count under G. L. c. 93A. The Superior Court judge concluded that the amendment to the complaint would be futile and denied the motion.[18] As stated by him in his memorandum of decision, the amendment would be futile because Longo's failure to apply for a license pursuant to § 32B could not form the basis of a c. 93A claim; there was no commercial activity between Longo and the tenants; and there was no evidence to support the claims that Longo's alleged failures constituted an unfair or deceptive act or practice. This determination of futility flows from the Superior Court judge's view, expressed as dictum in his

---

[16]Because Kendall Lane was created by Longo as part of his subdivision plan, we need not consider whether Longo did or did not convey his fee in that way to Salisbury. See note 10, *supra.*

[17]Because the trust document was not submitted in the trial court, we do not have the benefit of knowledge of its provisions.

[18]The Superior Court judge first denied, without prejudice, the tenants' motion to amend the complaint on the stated bases that the motion was not accompanied by a copy of the proposed amendment and that thirty days had not elapsed since the date of their demand letter to Longo. The tenants then renewed their motion to amend, attaching thereto a copy of their demand letter and their proposed amended complaint. It is the renewed motion to amend that the Superior Court judge denied on the ground of futility.

memorandum of opinion, that Longo's subdivision plan rendered the Act inapplicable.[19]

Based upon our conclusion that Longo controls and manages a manufactured housing community without a license, we think that his acts or failures to act, as described in both the demand letter and the proposed amended complaint, are actionable under c. 93A by reason of G. L. c. 140, §§ 32L(7) and 32S. The motion was filed shortly after the tenants brought their action and mailed their demand letter, both of which, in our view, were more than sufficient to put Longo on notice that should the theory of defense raised in his motion for dismissal or summary judgment and pressed on appeal fail (the inapplicability of the Act), he would have to defend against allegations that he did and does engage in acts which violate c. 93A.

In light of our determination that Longo's property is within the scope of the Act, we conclude that it was error to deny the tenants' motion to amend their complaint by adding thereto allegations of violations of c. 93A.

5. *Conclusion.* It follows from what we have said that the judgment dismissing the tenants' complaint is vacated and the denial of their motion to amend is reversed. The matter is remanded to the Superior Court for further proceedings consistent with this opinion, including a trial upon the tenants' complaint as amended to allege violations of G. L. c. 93A, and the entry of a judgment declaring that Longo is controlling and managing a manufactured housing community without a license.

*So ordered.*

---

[19]The Superior Court judge wrote: "Although this court need not decide whether G. L. c. 140, § 32[,] applies to the parcel, the court notes for completeness that it is unpersuaded by the plaintiff[s'] argument that this subdivided tract constitutes one lot with 3 or more manufactured homes on it as required for application of the statute. Quite to the contrary, the parcel contains 49 individual lots with but one home on each lot. The statute by its plain language does not apply to the Kendall Lane parcel."